248 So.2d 83 (1970)
Charles H. ZERINGUE
v.
LIBERTY MUTUAL INSURANCE COMPANY.
No. 4054.
Court of Appeal of Louisiana, Fourth Circuit.
October 5, 1970.
On Rehearing May 10, 1971.
Writ Refused June 21, 1971.
*84 Kierr & Gainsburgh, J. Stuart Douglass, New Orleans, for plaintiff-appellee.
James J. Morse, New Orleans, for defendant-appellant.
Before REDMANN, BARNETTE and DOMENGEAUX, JJ.
REDMANN, Judge.
Defendant appeals from a judgment which awarded plaintiff workmen's compensation benefits for total and permanent disability found to result from an accident which injured plaintiff's hand.
Defendant argues both that the suit was filed after the peremption period of LSA-R.S. 23:1209 and that plaintiff is in any case not totally and permanently disabled.
The accidental injury occurred in September 1964. Plaintiff's medical expenses were paid by defendant, as were total disability benefits from August 22, 1965 through October 10, 1965 (during which period plaintiff was absent from work due to surgery on his injured hand). Thereafter medical expenses were being paid as plaintiff continued under the care of the physician. Plaintiff and his wife uncontradictedly testified an adjuster for defendant many times after the operation visited and telephoned plaintiff and at about the time of Hurricane Betsy, September 1965, promised plaintiff that, in addition to the benefits paid during his then absence from work, he would be paid a settlement based on the doctor's final evaluation of disability of the hand; and that there was "`no time limit'". "His statement was that they could not make any settlement until they found out from Dr. Riordan how much the disability would amount to." On February 17, 1967, plaintiff had further surgery on the hand, and for his absence from work (for a different employer by that time) through February 27, 1967, defendant paid benefits of $55 on March 3, 1967. On December 26, 1967, Dr. Riordan discharged plaintiff. Informed thereafter that defendant considered his case "closed", plaintiff brought this suit February 19, 1968.

Peremption
R.S. 23:1209 provides:
"In the case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this *85 Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Defendant first argues that the last clause bars all compensation suits after two years after the date of the accident, whether the injury develops immediately or later, quoting obiter dictum to that effect from Smith v. Sohio Petr. Co., 163 So.2d 124, 127 (La.App.1964). This dictum appears to us erroneous. For obvious example, an employer who had paid a totally disabled employee full compensation during the two years after an accident could not stop payments thereafter and defeat the employee's suit on grounds it was filed too late. The two-year clause is only a limit on the extension of "the limitation" of one year in "such cases" "where the injury does not result at the time of, or develop immediately after the accident" (and even in those cases the two-year clause would have to be construed with the statute's prior sentence making "the limitation" take effect one year after the last payment if payments were actually made).
Here the injury resulted at the time of the accident, and the two-year limit in the later-injury extension of the one-year basic limitation is inapplicable. Plaintiff's suit is governed exclusively by the one-year limitation.
Defendant argues, since one year since the accident has passed and, after the payment of compensation on October 10, 1965, one year since that last payment had passed as of October 11, 1966, the one-year peremption "forever barred" plaintiff's suit as of that date, and the "stray" compensation payment of March 3, 1967 could not create an action in plaintiff's favor. Brister v. Wray Dickinson Co., 183 La. 562, 164 So. 415 (1935), utilizes this reasoning (although later payments there were less than the amount compensation would have been, and "it is quite obvious that the $12.50 per week cannot have been compensation payments, but were mere gratuities.")
However, here there is evidence of an agreement for payments. The evidence as a whole makes it clear that the cash settlement promised by defendant's adjuster, to be an amount calculated upon the amount of liability and not payable until the amount of disability was determined, was an offer to pay plaintiff for the partial loss of the function of his hand as provided by R.S. 23:1221(4) (e). The percentage of disability would determine the percentage of normal weekly benefit payable, R.S. 23:1221(4) (o); Babineaux v. Great American Insurance Co., 245 La. 718, 160 So.2d 591 (1964).
That plaintiff accepted this proposal is evident from the fact that he did await a final evaluation from the doctor, meanwhile forbearing to sue. However, he was asked on cross "Did you agree at that time [of the adjuster's statement of eventual payment dependent on amount of disability] to accept any settlement made by the insurance company?" Plaintiff answered "I didn't agree to accept anything." And plaintiff's wife, asked whether there was any agreement with the insurance company, replied "No. He said they would take care of all medical bills and compensation and at the end there would be a cash settlement that would be determined by what the doctor said the disability would be." While defendant stresses this testimony as showing there was no agreement, we think it merely shows there was no agreement as to the dollar amount. The testimony of plaintiff and his wife as a *86 whole satisfies us they did agree to accept the cash settlement to be determined (as to amount) on the basis of the doctor's ultimate evaluation of disability.
From the testimony, however, it is not clear that this agreement was repeated at a time less than a year prior to suit (or to the March 1967 payment) and we therefore cannot say that the ordinary one-year limitation of R.S. 23:1209 would not bar this suit.
Nevertheless the agreement must also be regarded as a compromise of plaintiff's claim, since it disregarded the possibility under the circumstances that plaintiff might be entitled under our jurisprudence to benefits for total and permanent disability, and provided only for benefits for partial loss of function of a hand.
Because the compromise of plaintiff's claim was not approved by the court as required by R.S. 23:1272 and 23:1273, plaintiff is allowed two years within which to demand the compensation which would have been due, Langston v. Hanbury, 11 So.2d 415 (La.App.1942), applying now R.S. 23:1274; see Malone, Louisiana Workmen's Compensation,§ 384 at p. 500. Accordingly the trial judge was correct in refusing to dismiss plaintiff's suit as barred by R.S. 23:1209.

The Merits
On the merits the question is whether plaintiff's disability is total.
Defendant argues the disability, although permanent, is not total because it does not prevent plaintiff from working as a mechanic. The contention is that plaintiff has suffered only a partial disability of his left hand.
Plaintiff's position is that his disability prevents him from doing fuel pump and injector mechanic's work, in which he had specialized and which is part of the journeyman mechanic's work. This specialty involves working with very small parts and tools. Plaintiff also complains that the mechanic work he still can do requires different working conditions, namely in an open work area rather than the air conditioned, clean room in which he did pump and injector work.
The medical evidence supports plaintiff's testimony that he cannot work with very small articles. The treating physician was Dr. Daniel C. Riordan, an orthopedic surgeon who limits his practice to hand surgery. He twice performed surgery on plaintiff's hand, including tendon transfers, but was unable to completely restore its functions. When discharged by the doctor, plaintiff still showed some clawing of the little and ring fingers and did not have complete recovery of all the hand muscles. Dr. Riordan opined plaintiff would have permanent weakness of the hand and less than full range of motion of the fingers; his grip now is considerably weaker than prior to the injury. The muscles involved assist in a tight grip over small objects "and also those are the muscles that give you the fine individual functions of the fingers that enable us to do some of the finer motions such as turning a nut or any of the small things that we would do with the tips of our fingers which require a small but fairly precise motion." While sensation had somewhat recovered, Dr. Riordan testified, the speed of response is slower than normal and plaintiff is "a little more liable to get burned on that hand. And the other thing that you don't get back after a nerve injury is the stereognosis, so-called, which means the third dimension sense". This last loss relates only to plaintiff's little finger.
In our opinion the record demonstrates plaintiff's disability to do the fine mechanical work in which he had been employed with advantageous working conditions, and this disability would affect other fine mechanical work which he might be expected to do as a journeyman mechanic.
However, defendant argues, plaintiff has in fact been rather steadily employed as a *87 mechanic, and is not disabled from working as a mechanic.
We believe the question whether plaintiff is totally or only partially disabled within the meaning of R.S. 23:1221 is governed by Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969). There a journeyman ironworker became disabled to do the heavy work required of structural and reinforcement ironworkers, but remained able to do the work of many other classifications of ironworkers, such as sheeters, riggers, etc., and to do the work of an ironworker foreman (which he was actually doing).
The Supreme Court observed, at 222 So. 2d 851-852,
"* * * Although he may be able to do a foreman's job or erect metal sheeting and other work classified as light work, he will be unable to fill all the jobs an ironworker is called upon to fill and, as a result, in time, his steady employment will be seriously affected, especially in Shreveport where there is a limited need for ironworkers. His ability to compete in the open market with other ironworkers will thus be impaired. For obvious reasons the employer who has a choice will employ the ironworker capable of performing both heavy and light work in preference to one who is only able to do light work. Like the lawyer in Madison v. Prudential Insurance Company, 190 La. 103, 181 So. 871 (1938), an ironworker who is able to do only light work will soon find himself without light work to do.
"Thus, as to the heavy work, we find that plaintiff's injury has brought about total permanent disability for which he would clearly be entitled to compensation, if only heavy work were involved, and, since heavy work is such an integral part of an ironworker's qualifications, plaintiff is, for all practical purposes, disabled from performing a substantial part of the duties of his trade."
The Court also quoted from Lindsey v. Continental Cas. Co., 242 La. 694, 138 So. 2d 543 (1962), the test for total disability:
"* * * (A) skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation."
It appears to us that plaintiff, disabled to do the specialized mechanic work he was in fact employed in, and disabled in the use of small tools for fine mechanical work, is totally disabled within the meaning of R.S. 23:1221.
Accordingly the judgment appealed from is affirmed at defendant's cost.
Affirmed.

ON REHEARING
Before REDMANN, GULOTTA and BARNETTE, JJ.
REDMANN, Judge.
Our original opinion failed to express the thought that the payment of further compensation within the post-compromise two-year period of R.S. 23: 1274 itself initiated a one-year period under R.S. 23:1209, within which this suit was brought.
But we now believe we erred in characterizing the "agreement" between adjuster and claimant as a compromise for purposes of R.S. 23:1274. Compromise must be in writing, C.C. art. 3071. See Charbonnet v. Ochsner, La., 246 So.2d 844 (1971).
Nevertheless we believe our original decree is correct, because by the action of its adjuster defendant is estopped to assert the one-year limitation of R.S. 23:1209, *88 at least until a reasonable time after the effect of the adjuster's statement would have been removed.
The uncontradicted testimony of plaintiff and his wife is that the adjuster stated there would be "`no time limit'". "His statement was that they could not make any settlement until they found out from Dr. Riordan how much the disability would amount to."
This case is not unlike Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), holding that a Federal Employers' Liability Act claimant's tardy suit could not be dismissed if claimant can prove that the employer's responsible agents so conducted themselves that claimant was justifiably misled into a good-faith belief that he could begin his action within a period longer than that of the statute.
Our plaintiff could reasonably have been misled into good-faith belief that "no time limit" would apply to his claim until the doctor could determine his final permanent disability. There is an inherent reasonableness to the adjuster's statement that no settlement could be made until that determination. Plaintiff's belief would have been reinforced by defendant's continual payment of regular medical expenses and especially of disability benefits at the time of his second operation. Not until after the doctor discharged him and he learned defendant considered his case closed did plaintiff's belief become untenable; and he thereupon promptly brought this suit.
The principle Glus relied on is that no man may take advantage of his own wrong. At 359 U.S. 234, 79 S.Ct. 762, Glus quotes Insurance Co. v. Wilkinson, 13 Wall. 222, 233, 20 L.Ed. 617 (1872):
"The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. * * *"
We conclude that this "deeply rooted" principle, "older than the country itself," is equally applicable in workmen's compensation cases.
Defendant is therefore estopped to assert plaintiff's suit's untimeliness.
For our original reasons on the merits, we find plaintiff totally and permanently disabled within the meaning of R.S. 23:1221.
We accordingly reinstate our original decree.
Original decree reinstated.