279 So.2d 185 (1973)
Wilson J. LANDRY
v.
Nelson FERGUSON.
No. 52714.
Supreme Court of Louisiana.
June 11, 1973.
Larry A. Roach, Lake Charles, for plaintiff-applicant.
Grenese R. Jackson, Jennings, for defendant-respondent.
DIXON, Justice.
Plaintiff Wilson J. Landry sued his employer, Nelson Ferguson, pursuant to the workmen's compensation statutes for medical expenses and compensation. The trial court dismissed plaintiff's suit on defendant's exception of one year prescription. R.S. 23:1209. The Court of Appeal reversed *186 in part, finding that only the plaintiff's claim for medical expenses had not prescribed. La.App., 264 So.2d 746 (1972). We granted plaintiff's request for a writ of certiorari. 262 La. 1129, 266 So.2d 433 (1972).
In 1967, plaintiff was employed as a farm laborer by defendant, a rice farmer. On September 1, 1967, plaintiff suffered a compound comminuted fracture of the lower third of the tibia of the left leg. Defendant Ferguson arranged for plaintiff's treatment by Dr. Edmund Campbell, an orthopedic surgeon practicing in Lake Charles, and paid him his regular wages until February or March, 1968, when plaintiff, with the aid of a leg brace, was able to return to most of his regular duties.
Plaintiff continued to work for the defendant until May, 1969, when he quit to undergo bone graft surgery to correct the healing of his fracture. This suit was filed in July, 1969.
The Court of Appeal found that the defendant had promised to pay plaintiff's medical bills. Thus, he was "estopped to deny, by way of prescription, his liability for medical expenses." 264 So.2d at 749. The court found that defendant had made no such assurances concerning weekly compensation benefits and concluded that plaintiff's claim for compensation had prescribed. With this latter conclusion, we disagree.
Plaintiff, a poorly educated farm laborer, testified concerning his reason for waiting almost two years before making his claim for workmen's compensation benefits and medical expenses:
"Q. Is there any particular reason that you did not seek legal counsel or legal advice before you did?
"A. Yes, sir.
"Q. Tell us why you didn't.
"A. Well, he had told me that he was going to pay for medical and expenses, he was going to take care of me and see to it that I get back in shape to where I could go back to work on my regular every day job. I mean by that, by continuing to water and everything else, as close as I could understand it.
"Q. Did he tell you from time to time that he was going to take care of your various expenses that may be incurred and that sort of thing?
"A. Yes, sir.
"Q. How about the time when it became necessary to have the bone grafting procedure. Did you discuss with him at that time the necessity for another operation and the expense that would be involved there?
"A. Yes, sir. Not exactly the expenses, but I discussed the operation.
"Q. What did he tell you or remark to you concerning the operation?
"A. Well, that he couldn't pay for the operation at that time.
"Q. Was this the first time that he had ever indicated to you that he was not going to take care of the necessary medical treatment and care?
"A. Yes, sir.
"Q. Now was this the thing that caused you, then to realize that you would need legal counsel?
"A. Yes, sir.
"Q. And was it at this time that you then sought out my services in connection with this accident?
"A. Pretty close to it, sir."
Defendant Ferguson did not deny that he promised to "take care" of the plaintiff:
"Q. Now during the timefrom the time of injury, until the spring of 1969, when it became apparent that he was *187 going to have further surgery, did you tell Wilson that you were going to take care of his bills? Not to worry about it, that you were going to take care of all of them?
"A. Well, now, what bills are you talking about?
"Q. The doctor bills and things that he was incurring?
"A. I don't remember whether I did or not.
"Q. Did you in fact, until the surgical, the second surgical procedure came necessary, did you up until that time tell him that you would take care of the bills and that you would see that the doctor would be taken care of, that sort of thing. But then when this further surgical procedure was necessary, you told him that you couldn't take care of it?
"A. I might have, sir. I don't remember."
An employer who lulls an injured employee into a false sense of security by promising to "take care" of him cannot later interpose a plea of prescription to the plaintiff's untimely suit for workmen's compensation benefits. See, Mella v. Continental Emsco, 189 So.2d 716 (La.App. 1st Cir. 1966), Carpenter v. E. I. Dupont De Nemours & Co., 194 So. 99 (La.App. 1st Cir. 1940).
Ferguson's promise to "take care" of plaintiff lulled him into a false sense of security and caused him to forego the timely prosecution of his claim for both medical expenses and compensation. Therefore, Ferguson cannot now rely on prescription as a defense to plaintiff's claims.
The exception of prescription is overruled, and all costs of these proceedings are assessed to the defendant. The case is remanded for further proceedings not inconsistent with this opinion.