338 So.2d 1208 (1976)
Mrs. Mona SEWELL, Plaintiff-Appellee,
v.
ARGONAUT-SOUTHWEST INSURANCE CO., Defendant-Appellant.
No. 5672.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
*1209 Richard A. Fraser, Shreveport, for defendant-appellant.
Gahagan & Gahagan by H. C. Gahagan, Jr., Natchitoches, for plaintiff-appellee.
Before HOOD, DOMENGEAUX and GUIDRY, JJ.
GUIDRY, Judge.
This is a workmen's compensation suit. Defendant is the workmen's compensation insurer of plaintiff's former employer, Natchitoches Parish Hospital. The district court awarded plaintiff benefits for total and permanent disability, 12% penalties, and attorney's fees in the amount of $2500.00. Defendant appealed.
Disposal of the several issues presented by this appeal requires a brief summary of the evidentiary facts, which for the most part, are not disputed.
Mrs. Mona Sewell, plaintiff herein, was an employee of the Natchitoches Parish Hospital, serving as a technician in a department of that hospital known as "Central Supply". She had worked in such capacity for approximately 8 years prior to the date of her alleged accident. The duties of a technician in central supply generally consist of ordering, stocking, maintaining and disbursing all needed hospital and surgical supplies and the cleaning and sterilization of surgical instruments, etc. In performing the physical tasks required the technician must be able to bend, stoop, climb and lift objects weighing from 25 to 30 pounds.
On December 26, 1973, during the course and scope of her employment with the hospital, plaintiff fell from a ladder and injured her back. On the date of accident *1210 plaintiff was seen by her family physician, Dr. Roy Cook, who immediately instituted a regime of conservative treatment. When Mrs. Sewell failed to respond to such treatment Dr. Cook referred her to Dr. A. E. Dean of Shreveport, Louisiana. Dr. Dean, an orthopedic surgeon, determined that Mrs. Sewell was suffering from a ruptured disc. On January 21, 1974, Dr. Dean performed a lumbar laminectomy on plaintiff, at the P. & S. Hospital in Shreveport, Louisiana, excising the L5, S1 disc. Subsequent to and as a result of this surgery, plaintiff developed a staphlococcus infection in the area of the incision, as a result of which she was hospitalized for sometime at both the P. & S. Hospital and the Natchitoches Parish Hospital. Following her release from hospitalization Mrs. Sewell remained under the care of both Drs. Cook and Dean, until she was advised that she could attempt to resume her employment, with a limitation however, that she should refrain from any lifting. Mrs. Sewell was paid workmen's compensation benefits by the defendant from the date of injury, December 26, 1973, to the date when she resumed her employment on June 17, 1974. On August 9, 1974, Dr. Dean released plaintiff from his care with a permanent, partial disability of the body as a whole of 15%.
Mrs. Sewell returned to her same job, however, she testified that because of the severe pain which she experienced in the lower part of her back from the outset of her re-employment she was unable to perform the greater part of the tasks which were required of a technician in central supply. Her inability to perform tasks requiring lifting, stooping, bending and climbing were attested to by her co-employees Wanda Harrison, Linnie Mae Fredieu, and by her daughter, Candice S. Airhart. In this regard, we note that plaintiff's supervisors, Mrs. Eura St. Andre, Director of Nurses, and Messrs. Ryder and Spillman, hospital administrators, all testified that in spite of the fact that Mrs. Sewell was not performing and was unable to perform all of the tasks performed by her during her previous employment, she did in fact work a regular shift and actually earned the wages which were paid to her.
Because of the continuing difficulty which Mrs. Sewell was having with pain in her lower back, she consulted Dr. Louis Cayer, an orthopedic specialist, on January 24, 1975. Dr. Cayer's examination of plaintiff revealed quite severe muscle spasms in the lumbar section of her back, loss of reflexes, atrophy in the right calf and other objective signs which prompted a conclusion by him that as a result of complications from the disc surgery and staph infection that plaintiff suffered from a 25% overall body impairment. It was Dr. Cayer's opinion that such disability would prevent plaintiff from performing the usual and customary duties performed by a clerk in central supply; that her complaints of pain were very real and would re-occur with frequency throughout her life; and, that such condition was permanent. On Dr. Cayer's advice, and because of her continued suffering, plaintiff submitted her written resignation to the hospital terminating her employment effective as of February 28, 1975. In her letter of resignation, to which was attached a copy of Dr. Cayer's report, Mrs. Sewell specifically requested that she be reinstated to workmen's compensation. Mrs. Sewell's letter with report attached was presumably forwarded by her employer to the latter's insurer, Argonaut-Southwest Insurance Company, as on April 24, 1975 a Mr. Harvey Griffith, adjuster of Beaubouef Claim Service Inc. of Shreveport, went to Natchitoches to contact plaintiff on behalf of the defendant-insurer. Upon arrival at Mrs. Sewell's home Mr. Griffith was requested to meet plaintiff's husband and an attorney friend, Mr. Sam Friedman, at the latter's office for the purpose of discussing plaintiff's demand for resumption of compensation payments. A meeting was held that same afternoon where a discussion was had between Messrs. Griffith, Sewell and Friedman. The plaintiff did not attend this meeting. The evidence presented by plaintiff and that presented by defendant concerning what transpired at this meeting is in direct conflict. Plaintiff's husband and Mr. Friedman both testified that at this *1211 meeting demand was made upon defendant through its representative that compensation payments to Mrs. Sewell be resumed in consideration of which the latter would forego any claim for penalties and attorney's fees. Messrs. Sewell and Friedman testified further that Mr. Griffith then acknowledged that Mrs. Sewell was entitled to payment of compensation and categorically stated that such payments would be made. The only other party present at this meeting, Mr. Griffith, testified that although demand was made that compensation payments to Mrs. Sewell be brought current and continued, he did not inform either Mr. Sewell or Mr. Friedman that the company would resume the payment of compensation.
The only other contact between plaintiff and Mr. Griffith occurred in early June of 1975, when the latter telephoned the former with the request that she be examined by a Dr. Rambach, the appointment with Dr. Rambach being fixed for June 26, 1975. Mrs. Sewell agreed to this request but later after consultation with Mr. Friedman and her husband she refused to be examined and so advised the company. When compensation payments were not resumed plaintiff again contacted Mr. Friedman and this suit was then instituted on September 26, 1975. Following the institution of suit, defendant filed an exception of prescription and an answer. The matter was tried and judgment was rendered in favor of plaintiff, the trial court concluding, pursuant to brief written reasons, that defendant's plea of prescription was ill founded because plaintiff was lulled into a sense of security by defendant's adjuster that compensation payments would be resumed and therefore defendant was estopped to plead prescription; Mrs. Sewell's wages after her return to her employment were paid in lieu of compensation and therefore plaintiff's suit was timely; plaintiff was totally and permanently disabled; and, under the circumstances plaintiff was entitled to penalties and attorney's fees.
On appeal defendant contends that the trial court erred in three main particulars, i.e., (1) in overruling defendant's plea of prescription based upon LSA-R.S. 23:1209; (2) in finding that plaintiff was totally and permanently disabled; and, (3) in awarding penalties and attorney's fees. We will consider these contentions in the order presented.

PRESCRIPTION
Plaintiff acknowledges that more than one year elapsed between the payment of last compensation and the institution of suit. Plaintiff argues, however, that the one year prescription provided for by LSA-R.S. 23:1209 is not applicable to bar suit by plaintiff for several reasons. Plaintiff first contends that defendant is estopped to plead prescription because she was lulled into inaction by representations of defendant's agents that payment of compensation would be resumed without the necessity of filing suit. Plaintiff secondly contends, in the alternative, that the wages paid to her during the period June 17, 1974 and February 28, 1975 were in lieu of compensation and that her suit filed in September 1975 was timely. Plaintiff thirdly contends, in the alternative, that under the "development of injury rule", first announced in Mottet v. Libby-Owens Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952), prescription did not begin to run until she resigned from work on February 28, 1975.
We first consider plaintiff's contention that defendant is estopped to assert prescription in bar of her claim.
At the outset, we observe that since more than one year elapsed between payment of last compensation and institution of suit plaintiff bears the burden of establishing that prescription has been interrupted and/or that defendant is estopped to urge such plea. Mella v. Continental Emsco, 189 So.2d 716 (La.App. 1st Cir. 1966), writ refused, 249 La. 762, 191 So.2d 141. Granger v. Nichols Construction Corporation, 202 So.2d 337 (La.App. 1st Cir. 1967).
Our examination of the record in this case prompts us to conclude that plaintiff has borne this burden.
*1212 Following plaintiff's injury on December 26, 1973 she was immediately paid compensation by the defendant. Although, plaintiff had had no previous experience with compensation matters she had no difficulty whatever in securing payment, same having been made promptly and voluntarily. Plaintiff concluded, on the basis of this prior experience, that she would encounter no difficulty in being reinstated to compensation upon her resignation, especially in light of the fact that prior to her resignation she had secured the opinion of an able physician to the effect that she had an overall body impairment of 25% and was totally and permanently disabled. When compensation payments were not forthcoming plaintiff made numerous inquiries through her employer concerning her reinstatement to compensation, such inquiries being made before and after her contact with the defendant's representative on April 24, 1975. On April 24, 1975, defendant's representative assured both plaintiff's husband and her attorney that she would be reinstated to compensation without the necessity of suit.[1] Plaintiff was contacted by the defendant's representative in early June of 1975 with the request that plaintiff be examined by a doctor of the insurer's choice, the appointment being made for June 26, 1975, 1 year and 2 days following the last payment of compensation. Under these circumstances it was certainly logical for plaintiff to conclude that her claim for reinstatement was being processed and that she would be restored to compensation without the necessity of filing suit. When compensation payments were not forthcoming plaintiff again contacted her attorney and suit was filed less than four months following plaintiff's last contact with defendant's representative.
It is well settled that an employer and/or insurer who lulls the injured employee into a false sense of security, thus inducing forebearance in the prosecution of a compensation claim is estopped to plead prescription to the injured employee's untimely suit. Mella v. Continental Emsco, A Division of Youngstown Sheet and Tube Company, 189 So.2d 716 (La.App. 1st Cir. 1966) writs refused Nov. 7, 1966; Landry v. Ferguson, 279 So.2d 185 (La.1973); Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972).
The court in Dupaquier v. City of New Orleans, supra, found that plaintiff, who had suffered a heart attack, was led to believe that full sick leave benefits which he was receiving included workman's compensation and that a suit for workman's compensation would be premature. In overruling the City's plea of prescription the Court stated:
"The purpose of the one year prescriptive period is to protect employers from the burdensome litigation of stale claims. When, however, the employer lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, the employer cannot invoke the time bar to defeat compensation."
Likewise, in Landry v. Ferguson, supra, the court determined that plaintiff, an uneducated farm laborer who was assured by his employer that he would be "taken care of", was lulled into a false sense of security. In Drane v. City of New Orleans, 328 So.2d 752 (La.App. 4th Cir. 1976) the court observed that statements to an employee that compensation will be paid without suit indicate the employer has recognized the claim, and an employee alleging untimely filing on account of such statements would assert a cause of action to estop the employer from pleading prescription.
On the basis of the evidence, as discussed hereinabove, we are of the opinion that the trial court could reasonably conclude that plaintiff was advised that compensation would be forthcoming without the necessity of instituting suit; that plaintiff relied on such representations and consequently *1213 did not file within the prescriptive period; and that plaintiff's suit was not stale, but rather, filed within a reasonable time after the adjuster's last contact with plaintiff. (See: Zeringue v. Liberty Mutual Insurance Co., 248 So.2d 83 (La. App. 4th Cir. 1971); writ denied 259 La. 61, 249 So.2d 203). Accordingly, under the liberal rules of construction afforded the workmen's compensation statute, we find defendant estopped to plead the prescription of one year.
Since we hold that defendant is estopped to plead prescription as a bar to plaintiff's claim we do not reach a consideration of plaintiff's alternate contentions made in opposition to defendant's prescriptive plea.

TOTAL AND PERMANENT DISABILITY
A review of the record reveals that when plaintiff returned to work on June 17, 1974 she was unable to perform the greater part of the physical tasks required of a technician in "Central Supply". Plaintiff did in fact assume lighter physical duties at the recommendation of her physician, Dr. Dean. Dr. Dean discharged plaintiff on August 9, 1974 finding at this time that she had an overall permanent partial disability of 15%. Plaintiff testified that from the outset of her re-employment she experienced constant and severe pain in the lower part of her back. Plaintiff's testimony in this regard was corroborated by her co-employees.
The plaintiff's complaints of pain were further substantiated by the medical testimony of Drs. Cook and Cayer. Both physicians found plaintiff to be totally and permanently disabled from performing work as a supply technician. Dr. Cook, who treated plaintiff from the date of the accident testified that all of plaintiff's complaints of pain were as a result of the injury she suffered in December of 1973 and the complications emanating therefrom. Dr. Cayer was in accord with these findings by Dr. Cook. Dr. Heinzk Faludi, a neurological surgeon also examined plaintiff. His report indicates that plaintiff was suffering from either a residual deep seated infection which might be due from the original surgery; a scar formation; or a disc reoccurrence possibly at a level of L3 or L4. Dr. Faludi stated that he could not give a more conclusive diagnosis without performing a myelogram.
The jurisprudence is well settled that an injured employee is not required to work in pain, and following an accident an employee who performs ordinary and usual tasks of his job in appreciable or substantial pain is considered "disabled". Further, the ability to perform less strenuous work does not preclude a finding of disability to perform former duties, since a person is considered disabled if he cannot thereafter compete with able-bodied men in the same job market. Grimes v. Red Ball Motor Freight, Inc., 321 So.2d 885 (La.App. 1st Cir. 1975) writs refused La.1976, 325 So.2d 278; Farrar v. Guy Atkinson Co., 325 So.2d 893 (La.App. 2nd Cir. 1976).
The trial court determined that when plaintiff returned to her employ she did so in disabling pain which pain she suffered up until her resignation on February 28, 1975. The trial court found plaintiff to be totally and permanently disabled. The record substantiates this conclusion of the trial judge.
The trial court judgment correctly awards plaintiff benefits for total and permanent disability, however, the judgment inadvertently fails to allow the defendant insurer a credit for the compensation payments previously made. We will amend the judgment to allow the insurer this credit.

ATTORNEY'S FEES AND PENALTIES
Having heretofore found that plaintiff's claim was timely filed and that plaintiff is totally and permanently disabled we turn to the final issue presented: Did the trial court commit manifest error in its award to plaintiff of $2500.00 in attorney's fees plus a penalty of twelve (12%) percent?
LSA-R.S. 22:658 provides in pertinent part:
"All insurers . . . shall pay the amount of any claim due any insured *1214 including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount."
The uncontradicted medical evidence shows that when plaintiff returned to work on June 17, 1974 she, at the recommendation of her physician, Dr. Dean, returned to lighter work duties, being unable to perform the usual physical tasks her job required. Obviously, the defendant determined, based upon the plaintiff's return to work, that she was no longer entitled to compensation. Yet at the time of plaintiff's re-employment she was still under the care of Dr. Dean who, not until August 9, 1974 discharged her and then with a 15% permanent partial disability. Subsequently plaintiff resigned from her employment on February 28, 1975 with complaints of severe pain, submitting at this time a medical report from Dr. Cayer which found her to have an overall disability of 25%. Dr. Cayer's report unequivocally stated that plaintiff was unable to perform the usual and customary tasks of a supply technician. Despite these uncontroverted medical reports, defendant did not resume the payment of compensation.
The above being considered we find defendant's refusal to pay plaintiff compensation within 60 days after its receipt of satisfactory proof was arbitrary and capricious. Clearly, the medical evidence submitted left no question as to plaintiff's total disability. See Morgan v. Lumbermen's Mutual Casualty Company, 317 So.2d 7 (La.App. 1st Cir. 1975); Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974).
It cannot be said that the legal dispute which arose following the filing of this claim beyond the one year prescriptive period gave defendant probable cause to refuse to pay the compensation claim previous to the expiration of the one year. On June 17, 1975, at which time the one year prescriptive period was to run, defendant had long since been arbitrary and capricious in its refusal to pay plaintiff's claim. Accordingly, we agree with the trial court's award of penalties and attorney's fees.
The trial judge awarded plaintiff $2500.00 as attorney's fees. Plaintiff has answered the appeal and contends that such award should be increased so as to compensate him for the additional legal work necessitated by this appeal. We have reviewed the record in this case and find the amount awarded by the trial court as attorney's fees to be reasonable and sufficient to compensate plaintiff's counsel for work on both the trial and appellate level.
For the reasons assigned the judgment appealed from is amended so as to allow the defendant a credit for the amount of workmen's compensation payments made for the period from December 26, 1973 to June 17, 1974 and as amended such judgment is affirmed. The costs of this appeal are assessed to the defendant-appellant.

AMENDED AND AFFIRMED.
DOMENGEAUX, J., concurs in the affirmation, but would increase the attorney fees an additional $500.00 so as to compensate appellee for work done on appeal. Horn v. Vancouver, La.App., 322 So.2d 816.
NOTES
[1] Although there is a conflict in testimony concerning whether or not a commitment was made to reinstate compensation, this conflict was resolved by the trial court favorable to plaintiff. Our examination of the record reveals a reasonable evidentiary basis for this conclusion which we do not disturb. Canter v. Koehring Co., 283 So.2d 716 (La.1973).