487 So.2d 700 (1986)
Earl F. BAKER
v.
GRINNELL FIRE PROTECTION SYSTEMS, INC. and Northbrook Insurance Company.
No. 85-CA-741.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Rehearing Denied May 16, 1986.
Ralph R. Miller, Norco, Leonard A. Washofsky, New Orleans, for plaintiff-appellee.
James L. Donovan, Donovan & Lawler, Metairie, for defendants-appellants.
Before KLIEBERT, BOWES and GAUDIN, JJ.
BOWES, Judge.
Defendants Grinnell Fire Protection Systems, Inc. and Northbrook Insurance Company (hereinafter "Grinnell" and "Northbrook") appeal the judgment of the district court declaring plaintiff Earl Baker to be totally and permanently disabled and entitled to maximum benefits under the workman's compensation laws. The sole issue on appeal is whether or not the trial court erred in its determination that the action for benefits had not prescribed. We affirm.
Mr. Baker was an employee of Grinnell on October 5, 1981, when he injured his back while moving a ladder during the course and scope of his employment. He testified that he felt a "burning" in his back, that the feeling eventually subsided, and that he went back to work. However, shortly thereafter, he began to experience pain in his left hip and leg. He sought medical assistance, but it was not until March 12, 1982, that plaintiff saw Dr. Joseph Kott, a neurosurgeon, who conducted a CAT scan and a myelogram. Dr. Kott informed Mr. Baker that he had a ruptured lumbar disc which required surgery and, during the discussion, Mr. Baker revealed the incident with his back. Plaintiff testified that this was the first time that he connected the back incident with his present problem.
Based on the above, plaintiff concedes that his lawsuit filed on July 25, 1983, had prescribed on its face based on the evidence as well as the trial court's finding that he (Baker) had learned of the nature of his injury (and that it was work-related) on March 12, 1982 "and therefore had until March 12, 1983 to file suit."
La.R.S. 23:1209 reads as follows:
In case of personal injury including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, *701 or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
Plaintiff contended at trial, and the court agreed, that the insurer was estopped from asserting the untimeliness of the suit because its adjuster had misled the plaintiff into a good faith belief that no time limit would apply to his filing of suit until all medical reports were received. The court, in it's reasons for judgment, found the present case to be indistinguishable from Zeringue v. Liberty Mutual Insurance Co., 248 So.2d 83 (La.App. 1st Cir.1971).
In the present case, Mr. Baker informed his foreman of the claim in June, 1982, but Northbrook did not receive notice of the claim until August 2nd of the same year. No determination of the claim was made immediately and, in September, plaintiff consulted an attorney who wrote Northbrook informing the company of his representation.
Ms. Joyce Hernandez, the adjuster, testified that on October 14, 1982, she informed plaintiff's counsel (hereinafter simply "counsel") that she was still trying to get all the medical reports and therefore could make no determination of liability at that time. She indicated that an offer would be forthcoming, if she obtained more medical information, and stated that counsel had agreed to help her get the reports which she needed.
In December, pursuant to a telephone call from counsel, Ms. Hernandez stated that she was still waiting for a report from one of the physicians involved. In January of 1983, counsel visited Ms. Hernandez in her Texas office, bringing with him the medical report in question. At that time an offer of settlement to compromise the claim was made by Ms. Hernandez and the offer was apparently to be left open indefinitely. Ms. Hernandez understood that the plaintiff was still under treatment, still incurring medical expenses, and that the claim was still active.
On March 1, 1983, Ms. Hernandez and counsel again spoke about a second surgery which plaintiff had recently undergone and the offer to settle was reiterated.
On March 14, 1983, a report on the second surgery was received by Ms. Hernandez. On July 25th of that year, counsel phoned the adjuster and stated that the standing offer was unacceptable. After the offer was not increased, suit was filed that very day.
Counsel testified that, throughout the period of negotiations, from September, 1982, through July, 1983, he understood that the offer might be increased if more significant medical evidence was produced. Thus the medical report relative to the plaintiff's second surgery was forwarded to Ms. Hernandez. Counsel stated that Ms. Hernandez enlisted his aid in attempting to obtain the medical reports so that a determination could be made. According to counsel's testimony, there were cordial relations between himself and Ms. Hernandez and that he felt they had an agreement that it was not necessary for a suit to be filed unless and until all negotiations had broken down.
The learned trial judge, in his reasons for judgment, found that such an understanding between the adjuster and counsel did exist and indicated by reference to Zeringue, supra, his belief that counsel was misled by the adjuster into a good faith belief in the existence of such an agreement. Consequently, the trial judge was of *702 the opinion that the insurer is now estopped from asserting that the suit is untimely (or has prescribed).
After an examination of the record, and according great weight to the factual findings of the trier of fact, as the jurisprudence commands us to do, we find no manifest error in such conclusion. Where there is a conflict in testimony, the appellate court should not disturb reasonable evaluations of credibility and reasonable inferences of fact made by the trial court. Chapman v. Belden Corp., 428 So.2d 396 (La. 1983).
In Zeringue, supra, the 4th Circuit found that the plaintiff could reasonably have been misled into the good faith belief that "no time limit" would apply to his claim until the doctor could determine his final permanent disability. In that case, the adjuster had stated to the plaintiff that there would be no time limit but that no settlement could be made until it was discovered how much the disability would amount to.
In Sewell v. Argonaut-Southwest Insurance Co., 338 So.2d 1208 (La.App. 3rd Cir. 1976), the court stated:
On the basis of the evidence, as discussed hereinabove, we are of the opinion that the trial court could reasonably conclude that plaintiff was advised that compensation would be forthcoming without the necessity of instituting suit; that plaintiff relied on such representations and consequently did not file within the prescriptive period; and that plaintiff's suit was not stale, but rather, filed within a reasonable time after the adjuster's last contact with plaintiff. (See: Zeringue v. Liberty Mutual Insurance Co., 248 So.2d 83 (La.App. 4th Cir.1971); writ denied 259 La. 61, 249 So.2d 203). Accordingly, under the liberal rules of construction afforded the workmen's compensation statute, we find defendant estopped to plead the prescription of one year.
It is well settled that an employer and/or insurer who lulls the injured employee into a false sense of security, thus inducing forebearance in the prosecution of a compensation claim is estopped to plead prescription to the injured employee's untimely suit. Mella v. Continental Emsco, A Division of Youngstown Sheet and Tube Company, 189 So.2d 716 (La.App. 1st Cir.1966) writs refused Nov. 7, 1966; Landry v. Ferguson, 279 So.2d 185 (La.1973); Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972).
The court in Dupaquier v. City of New Orleans, supra, found that plaintiff, who had suffered a heart attack, was led to believe that full sick leave benefits which he was receiving included workman's compensation and that a suit for workman's compensation would be premature. In overruling the City's plea of prescription the Court stated:
"The purpose of the one year prescriptive period is to protect employers from the burdensome litigation of stale claims. When, however, the employer lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, the employer cannot invoke the time bar to defeat compensation."
We agree with the reasoning of Zeringue and Sewell, and find these decisions applicable to the present case. We see no reason, under the circumstances and facts presented here, why an attorney, as well as a layman, despite his superior legal knowledge, cannot be misled and lulled into a false sense of security by what he truly believes to be an agreement regarding the facts or the law.
However, the jurisprudence also holds that the claimant must demonstrate that words, actions or inactions on the part of the employer or insurer induced him to withhold suit until the time for prescription had passed. Wesley v. Claiborne Electric Co-Op, Inc., 446 So.2d 857 (La.App. 2nd Cir.1984). The misrepresentation need not be deliberate or intentional but must be one on which plaintiff relied. Price v. Gas & Well Operating Service, 267 So.2d 598 (La. App. 3rd Cir.1972).
*703 Here, Ms. Hernandez's active enlistment of counsel's assistance in obtaining these reports lends credence to plaintiff's position. Negotiations were had and settlement offers were made subsequent to all apparent prescriptive periodsin January, 1983, March, 1983, and July, 1983. Ms. Hernandez testified that she was aware of the workman's compensation law and its stated period of prescription. Under the facts of this case, we find that the trial court could reasonably have concluded that the defendant's adjuster led the plaintiff's attorney into a good faith belief that, pending the receipt of all medical reports, the claim would remain viable and that filing of a lawsuit was unnecessary. Therefore, we can find no manifest error in the trial court's conclusion that defendant was estopped from asserting the defense of prescription.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are assessed to defendants.
AFFIRMED.