GOTHARD, Judge.
In this worker’s compensation case an injured warehouseman appeals an adverse decision by the hearing officer of the state Office of Worker’s Compensation.
Michael Carter was injured on January 24, 1988 when his ankle was pinned between a “transporter” and a steel beam in the Winn Dixie frozen food warehouse. His duties there were pulling merchandise ordered from the warehouse and moving the items through the warehouse on the transporter, a battery-operated cart.
Carter chose Dr. George Byram, an orthopedist, as his treating physician. Dr. Byram diagnosed the injury as a contusion to the right foot with a torn ligament and tarsal tunnel syndrome. He performed tarsal tunnel surgery on August 22, 1988. In 1989 Dr. Byram twice referred Carter to a work hardening program. He continued to complain of pain and swelling and completed neither segment of the program. After further testing and repeat examinations in 1989 revealed no physical basis for Carter’s complaints, on January 16, 1990 Dr. Byram released Carter for work with no restrictions. Carter’s worker’s compensation benefits were terminated as of January 29, 1990.
Carter filed a form 1008 complaint with the Louisiana Office of Worker’s Compensation on April 10, 1990. Trial of the merits was held before an administrative judge on January 31, 1991, following which the judge took the matter under advisement and both parties submitted post trial memo-randa. On August 21, 1991 the judge signed a judgment, without providing reasons, in favor of Winn-Dixie. It held that the plaintiff had failed to meet his burden of proving that he had a disability beyond January 16, 1990, which would have prevented him from engaging in any occupation for wages, and that he had received all the benefits to which he was entitled under the law.
The issues raised are as follows: 1) whether the trial court erred in finding the plaintiff was not temporarily totally disabled, in the light of uncontradicted evidence of his substantial pain; 2) whether supplemental earnings benefits should have been awarded; and 3) whether penalties and attorney’s fees should have been awarded.

*688
Temporary Total Disability

At the time of Carter’s injury, January, 1988, LSA-R.S. 23:1221(1) provided as follows, in pertinent part:
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience,
[[Image here]]
(c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by a preponderance of the evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

Substantial pain

The plaintiff's claim is based on his inability to work except in substantial pain. He asserts that he presented a prima facie case for disability under the substantial pain doctrine by showing that his pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market.
As summarized in Dauzat v. Gregory & Cook, Inc., 454 So.2d 807 (La.1984), whether pain is substantial enough to be disabling is usually a question of fact to be determined by the trial judge on the basis of both lay and medical evidence. The Supreme Court set out the standard of appellate review in Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992), at 361:
... The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court’s decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
Carter testified that up to time of trial his ankle continued to give him problems of numbness, sensitivity over the surgical scar, twitching, throbbing, stiffness, and aching. After he stood or walked twenty-five to thirty minutes his foot became swollen and discolored. He made two attempts to return to work. He first took a job in January, 1990 with a family friend, Lawrence Emmons, who operated an automobile repair shop. Emmons terminated him because his ankle gave way and he fell, breaking the battery he was carrying. Carter testified that two months before the trial he tried a security guard’s position for two days but the required walking, ten to fifteen minutes every two hours of a twelve hour shift, caused swelling and aching. He reported no other work attempts since his release, nor had he filed any applications.
Lawrence Emmons testified that Carter complained of pain in his foot when he had been on it about 1 ½ hours and it was noticeably blue. He also complained when he was sitting at the work bench. Emmons stated that he let Carter go because he felt something was wrong with his foot and that he, Emmons, would be “involved in a lawsuit.”
*689 Dr. George Byram testified by deposition. He is a board certified orthopedist, chosen by the plaintiff, and saw him twenty-eight times between February 5, 1988 and October 2, 1990. Dr. Byram stated that other than a scar and some swelling, the tarsal tunnel surgery he performed on August 22, 1988 produced no residuals. He explained to Carter that he could only reduce the pain and swelling by putting weight on his foot and increasing his activity, although at first his foot might hurt more. Carter apparently did not comply with the doctor’s recommendation.
Dr. Byram released Carter to light duty on December 1, 1988, after having referred him to a neurologist who found no contraindication to his return to work. When Carter returned to him with complaints of pain he referred the claimant to a work hardening program. The therapist there noted swelling and suggested the doctor check Carter for sympathetic dystrophy syndrome. A bone scan was negative for that problem, but Dr. Byram decided to try a sympathetic nerve block. When Carter returned two weeks later, on June 23,1989, with the same complaints, Dr. Byram advised him to return to the work hardening program, as he felt no further testing or treatment was appropriate. He reexamined Carter on January 16, 1990, found no swelling or discoloration or anything else wrong and released him to full duty. He assigned a 20% impairment rating to the foot, based upon the complaints of pain. He stated that the impairment does not prevent his working or performing any other activities. The doctor stated that he must exercise and use his foot, that he thought he would improve eventually but the foot might never “reach complete normalcy.”
Plaintiffs counsel had two other orthopedists examine Carter shortly before trial. Dr. John Watermeier examined Carter on October 30, 1990, and Dr. Richard Meyer saw him on January 8, 1991. Both physicians requested Carter’s medical records, but the records were not supplied.
Dr. Watermeier testified that Carter complained of increasing pain since his surgery, with burning and cramping of his foot. He also complained of numbness and weakness of his right leg and low back pain. He reported having had a back injury at age sixteen, which had given him no problems afterward. Dr. Watermeier’s examination revealed no muscle atrophy, spasm, swelling, or unusual sweat pattern. He noted a 75% range of motion of the ankle. Carter had trouble walking on heels and toes on the right side. There was marked tenderness over his large surgical scar. He felt the pain symptoms were consistent with a diagnosis of post-traumatic sympathetic dystrophy syndrome and recommended additional tests, including a bone scan and a MRI. X-rays taken by Dr. Watermeier were negative. As stated above, Dr. Byram referred Carter for a bone scan, which was negative for sympathetic dystrophy.
Dr. Meyer testified that Carter complained of pain in the ankle and foot; however, there is no mention of a complaint of back pain, as reported by Dr. Watermeier. The surgical scar was very sensitive to touch, and Carter reported pain and a tingling sensation radiating into the heel and foot. He seemed weak when walking on his toes and had limited motion of his ankle. Dr. Meyer stated that there was some discoloration around the scar, which was to be expected, and that the scar was somewhat thickened. He noted mild swelling. Dr. Meyer recommended a repeat nerve conduction study to determine whether there was a persistent problem with the posterior tibial, that is, a continuation of the tarsal tunnel syndrome, for which further surgery might be required. Another possible source of the pain he reported in his heel and arch of his foot might be plantar fasciitis, an inflammation of the sole of the foot. He felt there was a 30 to 40% functional disability of the foot.
We note that a nerve conduction study performed after surgery on October 28, 1988 by Dr. Maria A. Palmer, neurologist, was normal.
We find that the record before the court supports the court’s finding that the plaintiff failed to carry his burden of proving *690 that his pain is substantial and disabling, and that determination of fact is not clearly wrong.

Inability to engage in any employment

The plaintiff asserts that Dr. Byram released him to return to his Winn-Dixie position without full knowledge of its requirements. While it is true that the job description that Dr. Byram approved failed to note that the temperature of the freezing area was -20 degrees, Carter testified that he told the doctor that he worked in the freezer, that it was “pretty cold in there,” and that he had to be on his feet.
Carter’s own testimony suggests that he resisted attempting other work or even making application for jobs which did fit his abilities and interests and did not require long periods of standing or walking. Although he complained of pain in his foot only when he walked or stood, he was unwilling to explore bench jobs.
Andrea Wilson Dubose, a vocational consultant for Crawford and Company Health Rehabilitation, worked with Carter for several months to assist him in placement, beginning October 30, 1989, when the doctor restricted him as to lifting and carrying loads over 50 and 25 pounds respectively. Carter’s aptitude tests indicated he was best suited to working with his hands, and he showed interest only in auto mechanics’ work, in which he had experience and training. He eliminated employment where clerical skills or sales ability were required. On cross examination the defendant’s counsel asked Ms. Dubose whether the jobs on the list she submitted to Carter were immediately available. She admitted that few were, but said that most employers requested applications in view of expected openings. She encouraged Carter to apply and/or request interviews for those such as bench mechanic, which fit his interests, abilities, and current restrictions; however, he did not do so.
Michael Carter was at time of trial twenty-four years old, 5 féet 11 inches tall, and weighed 240 pounds. He had a high school diploma and vocational school certificate. He was driving a pick-up truck with standard transmission, did some yard work and house work, and was able to lift 50 pounds. He testified that most of the jobs on the vocational consultant’s list paid minimum wage. He said:
... I ain’t going to work for minimum wage. I’m not 15 years old anymore.
When asked if he was interested in work as a car salesman or car rental employee, he said:
It’s not that I don’t like it, it was the pay, that was the problem. If I look for something, I’m going to look for something better, you know, more pay.
As Carter admitted he was able to do some work, we find no error in the judgment as to his ability to undertake employment for wages.

Supplemental Earnings Benefits

In order to be entitled to supplemental earnings benefits, the employee must be unable to earn 90% or more of the wages he received at the time of his injury. LSA-R.S. 23:1221(3). He bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). Once he has made out a prima facie case of entitlement, if he is not employed, supplemental earnings are based on the amount he is able to earn or which he would have earned in employment that was offered to him or is proven available to him in his geographical area. LSA-R.S. 23:1221(3)(a), (c)(i).
In this case, as Carter was released without restrictions, it is presumed that he can resume his former position or one with equivalent pay. As Carter has not carried his burden of proving that a disability prevents his earning his previous wages or any at all, he is barred from receiving supplemental earnings benefits.

Penalties and Attorney’s Fees

Penalties and attorney’s fees under LSA-R.S. 23:1201.2 and 23:1201(E) for arbitrary and capricious discontinuance of benefits, claimed by plaintiff, were not referred to in the judgment. Where the judgment is silent, it is assumed that the claim is denied. Sun Finance Co., Inc. v. *691 Jackson, 525 So.2d 532 (La.1988). As the employer terminated benefits in accordance with a full release by the plaintiffs treating physician, we find no entitlement to statutory penalties.
For the reasons assigned above, the judgment below is affirmed.
AFFIRMED.