646 So.2d 1092 (1994)
Margaret S. WILLIAMS
v.
WILLIAM WRIGLEY, JR. CO.
No. 94-CA-370.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
Rehearing Denied January 17, 1995.
*1093 Kevin K. Gipson, Donovan & Lawler, Metairie, for plaintiff/appellant.
George E. Escher, Law Office of James J. Kokemor, Metairie, for defendant/appellee.
Before WICKER and GOTHARD, JJ., and JOHN BOUTALL, J. Pro Tem.
GOTHARD, Judge.
Claimant, Margaret Williams, appeals a judgment of the Office of Workers' Compensation ruling that her claim for total and permanent disability had prescribed. We affirm.
Ms. Williams injured her right shoulder on September 30, 1986 when she lifted a supermarket display of gum as part of her job as a merchandiser with the William Wrigley, Jr. Company (Wrigley). She received a total amount of $14,823.00 in compensation for temporary total disability until November 13, 1990, when benefits were terminated. The claimant also received medical benefits in excess of $30,000.00 at the time of trial and the payments were ongoing.
Claimant filed this action seeking indemnity payments on June 25, 1992. Defendant filed an exception of prescription. A hearing was conducted resulting in a judgment in favor of the defendant finding the claim had prescribed. Claimant appeals that judgment arguing three assignments of error; that the hearing officer erred in granting the defendant's exception of prescription, in failing to address the issue of supplemental earnings benefits, and in failing to award penalties and attorney's fees for arbitrary and capricious conduct.

PRESCRIPTION
LSA-R.S. 23:1209 provides in pertinent part that, where payments have been made, all claims for payments shall be forever barred unless filed within one year from the date of the last payment. In this case the date of the last payment was November 13, 1990 and the claim was filed June 25, 1992, well beyond the one year prescriptive period. Claimant does not dispute the fact that the claim appears prescribed on its face and recognizes her burden of proof to overcome the assumption that the claim has prescribed. Claimant's argument is that the defendant lulled her into a false sense of security by continuing settlement negotiations prior to and subsequent to the date of prescription.
The facts adduced at trial show that an offer of $10,000.00, plus $5,000.00 for medical expenses, was made by defendant to settle the claim in July of 1990. On December 10, 1990 claimant and her husband rejected that offer and made a counter offer of approximately $40,000.00 plus medicals. The matter remained unresolved, and on November 21, 1991 Kim Taylor, a senior claims adjuster for *1094 defendant, called Ms. Williams and offered a lump sum compromise of $20,000.00. Ms. Taylor testified that she advised Ms. Williams that the offer was only good for thirty days. Ms. Williams informed Ms. Taylor that she would think about it and call her back.
Ms. Williams verified the phone call from Ms. Taylor and the tender. She originally testified that she verbally accepted the offer and requested Ms. Taylor to mail it to her. However, when confronted with previous conflicting testimony given in a deposition, Ms. Williams recanted and stated, "I messed up when I told you I accepted it. I was planning to accept it. I never did tell Kim Taylor, yes, I accept it."
On December 30, 1991, Ms. Williams called Ms. Taylor regarding the possibility of obtaining supplemental earnings benefits. Ms. Taylor advised Ms. Williams that she would probably not be eligible for such benefits because of her low average weekly wage and the lack of restrictions on her ability to perform light duty work. Both parties agree that prescription was never discussed.
Ms. Williams never accepted the offer made to her by defendant and filed this action in June of 1992, approximately six months after the expiration of the offer made by defendant.
Claimant's position, that an employer and/or insurer who lulls the injured employee into a false sense of security, thus inducing forbearance in the prosecution of a compensation claim is estopped to plead prescription to the injured employee's untimely suit, is well established in the law. See, Mella v. Continental Emsco, A Division of Youngstown Sheet and Tube Company, 189 So.2d 716 (La.App. 1 Cir.1966), writ refused 249 La. 762, 191 So.2d 141 (1966); Landry v. Ferguson, 279 So.2d 185 (La.1973); Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972); Baker v. Grinnell Fire Protection Systems, Inc., 487 So.2d 700 (La. App. 5 Cir.1986), writ den. 493 So.2d 639 (La.1986). In order to prove that her tardiness in filing a claim was due to her being lulled into a false sense of security, a workers' compensation claimant must show that words, actions, or inactions on the part of the employer caused her forbearance. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La. App. 2 Cir.1991); Keller v. Marathon Oil Co., 613 So.2d 795 (La.App. 5 Cir.1993).
Claimant cites Baker v. Grinnell Fire Protection Systems, Inc., supra, and, Zeringue v. Liberty Mutual Insurance Company, 248 So.2d 83 (La.App. 4 Cir.1971), writ den. 259 La. 61, 249 So.2d 203 (1971) in support of her position. We find both cases to be factually distinguishable.
In Baker, supra, counsel for claimant was involved in negotiations with the adjuster. Counsel testified that there were cordial relations between the two throughout the negotiations, and it was his understanding that a settlement offer, left open indefinitely, might be increased if the medicals justified the increase. The adjuster told counsel that liability could not be assessed until all the medical reports were received and helped counsel in obtaining those reports. The final medical report on the second surgery was received by the adjuster in March, and in July of the same year the adjuster made a new offer which was not increased. Counsel rejected the offer and filed suit the next day. In that case the court found that the adjuster mislead the plaintiff into a good faith belief that no time limit would apply to his filing of suit until all medical reports were received.
In Zeringue an agreement existed to wait until the percentage of disability was determined to assess the value of the claim. There was uncontradicted testimony to prove that the agreement to wait had no time limit.
Again, the facts of the case at bar are different. Here the claimant simply ignored a stated deadline for acceptance of an offer. The claimant knew that the offer made on November 21, 1991 would expire in thirty days. She admits that she waited until December 30, 1991 to contact the adjuster, and that the subject of that conversation was supplemental earnings benefits rather than the acceptance of the offer. It was not until June, 1992 that the claimant decided to reject the offer and file suit. There is no evidence that claimant was mislead into believing that her claim would not prescribe.
*1095 The facts in the instant case are undisputed. In his written reasons for judgment the hearing officer stated:
This Court can find no mis-statements (sic) that would confuse the plaintiff or mis-lead (sic) that claimant into a belief that her claim would not prescribe. The employer is not under any obligation to advise the claimant about the law of prescription.
Because we find ample evidence in the record to support that conclusion, we affirm the judgment of the hearing officer as it relates to the issue of prescription.

SUPPLEMENTAL EARNINGS BENEFITS
The claimant complains that the hearing officer erred by not awarding supplemental earnings benefits. Claimant cites LSA-R.S. 23:1209(A) in support of her argument that prescription has not run on this portion of her claim. The cited statute provides that such a claim may be made within three years from the last payment of benefits.
Defendant does not dispute the timeliness of the claim. Defendant argues that claimant is not eligible to receive benefits because supplemental earnings benefits were not due during the period of temporary total disability, and because claimant earned so little money that any period during which she was not temporarily disabled, she would have been capable of earning more than her salary at the time of her injury.
In order to be entitled to supplemental earnings benefits, the employee must be unable to earn 90% or more of the wages she received at the time of her injury. LSA-R.S. 23:1221(3) She bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Carter v. Winn Dixie, Louisiana, Inc., 613 So.2d 686 (La. App. 5 Cir.1993), writ den. 617 So.2d 940 (La.1993).
In the instant case the evidence shows that, at the time of the injury, the claimant was working at an hourly rate of $7.75 about eighteen hours per week. At trial it was stipulated that her total average weekly wages were $121.50.
The claimant had two surgeries. The first, an orthoscopic acromioplasty was performed on May 9, 1989. Because that surgery did not relieve her symptoms, a second surgery to repair a rotator cuff tear and remove a calcium deposit from the rotator cuff was performed on April 24, 1992.
The record contains a deposition given by the treating physician, Dr. Jack Winters. During his deposition, Dr. Winters read from a letter he wrote to the insurance carrier in July of 1991 relating to job assignments which would be appropriate for claimant in her physical condition. In that letter he stated that she would be capable of a job assignment which did not require her to do excessive lifting or arm raising. Jobs suggested by Dr. Winters were, "those associated with office work, including a cashier, a receptionist, a telephone operator, to mention only a few".
In his deposition Dr. Winters testified that he had last seen the claimant on January 27, 1993. At that time she reported pain of a different quality, which was located more over the shoulder joint than over the rotator cuff. She had excellent range of movement in the shoulder, and the shoulder had been decompressed very well. He said that his recommendation on job capability was the same at the time of the deposition as it was in the 1991 letter previously discussed. Given her low rate of pre-injury earnings and the testimony by her doctor that she was capable of clerical work, we find that the claimant has failed in her burden of proof that she is incapable of earning at least 90% of her pre-injury wages.

PENALTIES AND ATTORNEY'S FEES
The issue in the final assignment of error is whether the claimant is entitled to penalties and attorney's fees for arbitrary and capricious behavior on the part of the defendant. Because we find Ms. Williams' claim has prescribed and she is not entitled to supplemental earnings benefits, we do not *1096 find an award of penalties and/or attorney's fees to the claimant is warranted.
AFFIRMED.