707 So.2d 23 (1998)
Dennis CAUSBY
v.
PERQUE FLOOR COVERING and Louisiana Workers' Compensation Corporation.
No. 97-C-1235.
Supreme Court of Louisiana.
January 21, 1998.
*24 Leslie M. Koch, Baton Rouge, for Applicant.
Joseph G. Albe, Metairie, for Respondent.
VICTORY, Justice.[*]
We granted a writ to determine whether Dennis Causby's claim for workers' compensation benefits has prescribed under La. R.S. 23:1209. After review of the record and the applicable law, we reverse the Fifth Circuit's holding that prescription was suspended and hold that Causby's claim has prescribed.

FACTS AND PROCEDURAL HISTORY
On March 11, 1993, Causby was injured during the course and scope of his employment with Perque Floor Covering ("Perque") while he was lifting furniture. As a result of this accident, Causby underwent surgery to remove his left testicle on March 12, 1993. Causby was paid weekly workers' compensation benefits from March 19, 1993 through April 1, 1993. Medical benefits were also paid on behalf of Causby. Causby returned to work in April of 1993.
Todd Justice ("Justice") was the claims adjuster working for Louisiana Workers' Compensation Corporation ("LWCC"), which provided workers' compensation insurance to Perque. Justice testified that LWCC terminated Causby's weekly disability benefits on April 1, 1993 because Causby had returned to work. Sometime in April, Justice contacted Causby by telephone to tell him his benefits were being terminated. Causby asked Justice if he was entitled to any more workers' compensation benefits and, because loss of a testicle was not a scheduled injury under the Workers' Compensation Act at that time, Justice told him he would not be receiving any further benefits.[1]
In February of 1995, Causby met with an attorney who informed him that he was entitled to workers' compensation benefits for his loss of a testicle. Accordingly, Causby filed this suit for permanent partial disability benefits on May 24, 1995.
The defendants filed an exception of prescription, claiming that Causby's suit had prescribed as it was filed more than one year from the date of the last workers' compensation payment. Following a hearing, the workers' compensation judge held that prescription was interrupted in April of 1993 when Justice told Causby he was entitled to no further benefits, stating that this was an intentional act by Justice upon which Causby relied to prevent Causby from asserting any further claims for his loss. The Fifth Circuit denied writs finding that defendants had an adequate remedy on appeal.
After a trial on the merits on August 14, 1996, the workers' compensation judge found that Causby was entitled to fifty (50) weeks of disability benefits in the amount of $307.00 per week for the loss of his testicle. In addition, the judge found that the issue of prescription was res judicata.
While noting that the issue of prescription was not res judicata, the Fifth Circuit Court of Appeal affirmed the judgment of the hearing officer denying the exception of prescription and awarding disability benefits. Dennis Causby v. Perque Floor Covering and Louisiana Workers' Compensation Corporation, 96-CA-990 (La.App. 5th Cir. 4/9/97), 694 *25 So.2d 430. We granted a writ to consider whether the lower courts were correct in finding that prescription had been interrupted or suspended. Dennis Causby v. Perque Floor Covering and Louisiana Workers' Compensation Corporation, 97-C-1235, 701 So.2d 138 (La.9/19/97).

DISCUSSION
There is no dispute that Causby's last payment of temporary total disability benefits was in April of 1993. La. R.S. 23:1209[2] provides the prescriptive period for workers' compensation claims. In cases such as this, where disability benefits have been paid, a claimant has one year from the date of the last payment to file his claim. Because Causby did not file his claim until May 24, 1995, the suit is prescribed on its face. The burden falls upon the claimant to show that the running of prescription was interrupted or suspended in some manner. Lima v. Schmidt, 595 So.2d 624 (La.1992).
Although Civil Code article 3467 provides that prescription runs against all persons unless they are included in some exception established by law[3], "[t]his court has, however, accepted in certain limited situations the common law doctrine Contra non valentem agere non currit which means that prescription does not run against a person who could not bring his suit." Nathan v. Carter, 372 So.2d 560, 562 (La.1979) (citing Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970); Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598 (1916)).
This Court has recognized four judiciallycreated categories of contra non valentem:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
(4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211 (and cases cited therein).
In workers' compensation cases, this Court has applied the doctrine of contra non valentem to suspend prescription in certain situations based on conduct of the employer or employer's representative which effectually prevents the employee from filing his claim.[4] In Landry v. Ferguson, an uneducated farm laborer did not file his suit timely because his employer assured him that he would take care of him. 279 So.2d 185 (La.1973). We *26 held that "an employer who lulls an injured employee into a false sense of security by promising to `take care' of him cannot later interpose a plea of prescription to the plaintiff's untimely suit for workmen's compensation benefits." Id. at 187. In Nathan v. Carter, supra, the employer's claims manager told the deceased employee's widow that they would conduct a full investigation and that after the investigation, she would be given a lump sum settlement. The claims manager also told the widow not to hire an attorney, warning her that if she did, her benefits would be terminated. We held that the widow's untimely suit had not prescribed because the defendant committed an intentional act of fraud or misrepresentation designed to hinder, impede, or prevent plaintiffs from asserting their cause of action or lull them into a false sense of security. 372 So.2d at 563. See also Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 1972) (prescription interrupted where plaintiff was led to believe that full sick leave benefits he was receiving included workers' compensation benefits).
Numerous court of appeal cases have recognized that prescription can be suspended in workers' compensation cases when the employer lulls the employee into a false sense of security, thus justifying the employee's delay in filing suit, but most courts have rejected that argument based on the facts of the particular case. See Davis v. Brown's Velvet Dairy Products, 43 So.2d 266 (La.App.Orleans 1949) (vague, general and indefinite allegations that the employer promised to take care of the employee are insufficient to interrupt the running of prescription); Green v. Grain Dealers Mutual Insurance Co., 144 So.2d 685 (La.App. 4th Cir.1962) (prescription not suspended where claims adjuster mistakenly told employee that he had two years to file his claim as there is no duty on the part of the adjuster to advise the employee correctly on the Louisiana law of prescription); Williams v. Red Barn Chemicals, Inc., 188 So.2d 78 (La.App. 1st Cir.1966) (promise by the employer to investigate and communicate with plaintiff regarding his claim does not suspend prescription); Drane v. City of New Orleans, 328 So.2d 752 (La.App. 4th Cir.1976) (a statement by an employer's representative that the employee has no valid workers compensation claim is entirely different than a statement that the employee will be taken care of and serves to notify the employee that he cannot rely on receiving compensation without suit and must seek legal advice or pursue his claim otherwise than through amicable settlement with the employer); Johnson v. Morton Salt Co., 377 So.2d 549 (La.App. 3rd Cir.1979) (employee not lulled into believing that the sickness and accident benefits he was receiving were actually workers' compensation benefits); Keller v. Marathon Oil Co., 613 So.2d 795 (La.App.5th Cir.1993) (employer's payment of sick leave benefits did not mislead employee into a false sense of security sufficient to suspend prescription); Lee v. East Baton Rouge Parish School Board, 623 So.2d 150 (La.App. 1st Cir.), writ den., 627 So.2d 658 (La.1993) (a statement by the employer's representative that the employee has no valid claim should serve to notify the employee that she cannot rely on receiving compensation without suit and that she must pursue her claim otherwise than through amicable settlement with the employer); Bledsoe v. Willowdale Country Club, 94-CA-234 (La.App. 5th Cir. 9/27/94), 643 So.2d 1302 (no showing that employer lulled employee into false sense of security to induce him to withhold suit); Williams v. William Wrigley, Jr., Co., 94-CA-370 (La. App. 5th Cir. 11/16/94), 646 So.2d 1092, writ den., 95-0373 (La.4/7/95), 652 So.2d 1346 (employer did not lull employee into false sense of security by continuing settlement negotiations prior to and subsequent to the date of prescription where there was no evidence that employee was misled into believing that his claim would not prescribe); Siemssen v. Manpower Temporary Services, 95-CA-80 (La.App. 5th Cir. 5/30/95), 656 So.2d 1115 (employer's payment of disability insurance benefits did not lull employee into false sense of security so as to suspend prescription); Brown v. Caddo Career Center, 28,111 (La.App. 2nd Cir. 2/28/96), 669 So.2d 712, writ den., 96-1042 (La.5/31/96), 674 So.2d 262 (receipt of disability benefits instead of workers' compensation benefits did not lull employee into false sense of security).
*27 The factual scenarios in cases where courts have found that the running of prescription has been suspended by the actions of the employer in lulling the employee into a false sense of security are much different than the facts presented in this case. As discussed earlier, in Nathan v. Carter, the claims manager assured the claimant that a full investigation would be conducted after which the claimant would be given a lump sum settlement and actually threatened the claimant that if she hired an attorney, her benefits would be terminated. 372 So.2d at 562. In Wesley v. Claiborne Elec. Co-op., Inc., the court held that where the employee reasonably thought the sick pay benefits he was receiving during his disability were actually workers' compensation benefits, the employee was lulled into a false sense of security sufficient to suspend the running of prescription. 446 So.2d 857, 860 (La.App. 2nd Cir. 1984), writ den., 450 So.2d 955 (La.1984). In Baker v. Grinnell Fire Protection Systems, Inc., the court found that the defendant's adjuster led the plaintiff's attorney into a good faith belief that, pending the receipt of all medical reports, the claim would remain viable and that filing of a lawsuit was unnecessary. 487 So.2d 700, 703 (La.App. 5th Cir.1986), writ den., 493 So.2d 639 (La.1986).
Until the court of appeal opinion in this case, no reported Louisiana decision has held that an employee has been lulled into a false sense of security which would justify delay in filing a workers' compensation claim where the employer or claims adjuster tells the employee that he is not entitled to further benefits. In this situation, far from being lulled into a false sense of security that he will receive benefits, the employee is told, perhaps even in error, that he has no claim for benefits. At that point, the employee is put on notice that his only avenue for recovery is to hire an attorney and file suit within the established time limits. It is unreasonable for the employee to think that he can sit on his rights indefinitely until an attorney tells him he is actually entitled to benefits. We agree with the following reasoning of the Fourth Circuit opinion in Drane v. City of New Orleans, supra, authored by now Justice Lemmon:
A statement by the employer's representative that the employee has no valid claim is entirely different from one that the employee will be taken care of (as in Landry v. Ferguson, La., 279 So.2d 185 (1973)), or one that compensation will be paid without suit. The latter statements to the employee indicate that the employer has recognized the claim, and an employee alleging late filing on account of such statements would assert a cause of action to estop the employer from pleading prescription.
However, a statement by an employer's representative that the employee has no valid claim is the equivalent of the employer's denial of the claim. Such a statement would serve to notify the employee that he cannot rely on receiving compensation without suit and that he must seek legal advice or pursue his claim otherwise than through amicable settlement with the employer.
328 So.2d at 754.
In this case, the adjuster told Causby that he was entitled to no further benefits. Causby testified that he knew the adjuster was not an attorney. In fact, at that time, the adjuster's statement was not even a misstatement of fact or law as loss of a testicle was not a scheduled injury under La. R.S. 23:1221(4)(a)-(o) and did not appear to fall under the "catch-all" provision of La. R.S. 23:1221(4)(p), allowing recovery "where the usefulness of the physical function of the ... genito-urinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired...." Furthermore, the case of Lindon v. Terminix Services, Inc., 617 So.2d 1251 (La.App. 3rd Cir. 1993), writ den., 624 So.2d 1226 (La.1993), holding that loss of a testicle was covered even though the testicles are not located in the thoracic or abdominal cavities, had not yet been decided.[5] This Court has never *28 addressed the issue. Therefore, the adjuster did not make a misstatement, nor did he lull Causby into a false sense of security or prevent Causby from timely filing his claim.

CONCLUSION
The statement by the adjuster does not fall within the limited exception recognized by the jurisprudence that statements by an employer that lull the employee into a false sense of security or prevent the employee from timely filing his lawsuit will suspend the running of prescription. Since the plaintiff's claim has prescribed on its face and the plaintiff failed to show a suspension or interruption, the lower courts should have sustained the exception of prescription.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed, defendants' exception of prescription is sustained, and plaintiff's claim is dismissed.
REVERSED AND RENDERED.
NOTES
[*] Traylor, J., not on panel. Rule IV, Part 2, § 3.
[1] There is some question regarding Justice's exact words. It is unclear whether Justice said "you are not entitled to any more benefits" or "LWCC will not pay you any more benefits." However, this distinction is irrelevant in our view.
[2] La. R.S. 23:1209 A provides as follows:

In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
[3] The Civil Code provides that "prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." La. C.C. art. 3464. This article has been applied where the debtor lulls the creditor into believing that he will not contest liability. Lima v. Schmidt, supra at 634. However, this legislatively-created exception does not apply because rather than acknowledging the debt, the adjuster told Causby that no debt was owing at all.
[4] We have also held that the running of prescription is suspended where the employer is paying the injured worker wages in lieu of compensation. Lester v. Rebel Crane & Service Co., 393 So.2d 674 (La.1981). This exception is inapplicable here.
[5] Although in 1973, the Third Circuit in Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3rd Cir.1973) held that loss of a testicle was a compensable injury under La. R.S. 23:1221(4)(p), that case is inapplicable. In Breaux, the plaintiff lost his only remaining testicle in a work-related accident, and, because the testicles produce spermatozoa and testosterone, the court found that he had suffered the loss of the usefulness of a physical function under La.R.S. 23:1221(4)(p). However, in 1973, La. R.S. 23:1221(4)(p) broadly allowed recovery "where the usefulness of a physical function is seriously and permanently impaired," without the restriction added in 1983 which only allows recovery for serious and permanent impairment "of the usefulness of the physical function of the respiratory system, gastrointestinal system, or genito-urinary system, as contained in the thoracic or abdominal cavities."