# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 15-180 consolidated with 15-181


**ESTATE OF SHELLIE BELAIRE (JUDGE J. AYO ON BEHALF OF MINOR SON G.M.A.)**

**VERSUS**

**CRAWFISH TOWN USA, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF ST. MARTIN, NO. 14-02955 C/W 14-02958
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AMY, J., dissents and assigns reasons.**

**PICKETT, J., dissents for the reasons assigned by Judge Amy.**


**REVERSED AND REMANDED.**


Jeffery F. Speer
Doucet & Speer
P. O. Drawer 4303
Lafayette, LA 70502-4303
Telephone: (337) 232-0405
COUNSEL FOR:
    Plaintiff/Appellant - Estate of Shellie Belaire (Judge J. Ayo o/b/o G.M.A.)

**Eric J. Waltner**
**Allen & Gooch, A Law Corporation**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**Telephone:  (337) 291-1400**
**COUNSEL FOR:**
    **Defendants/Appellees - LUBA Workers' Compensation and Crawfish**
    **Town USA**

**THIBODEAUX, Chief Judge.**

In this workers' compensation case, Plaintiffs, the dependent children of a deceased employee, appeal the grant of a motion for summary judgment filed by the employer, Crawfish Town USA, Inc., and its insurer, LUBA Workers' Compensation. Plaintiffs filed a claim against these Defendants for death benefits alleging the employee's death was caused by an overdose of medication prescribed as a result of a work accident. Defendants filed a motion for summary judgment, contending that the claim was filed after the prescriptive period of one year from the employee's death and that Plaintiffs would not be able to establish causation at trial. In turn, Plaintiffs argued that the prescriptive period should have commenced on the date they discovered they had a cause of action and that they established causation with the coroner's testimony and documents from his investigation. Because we find Plaintiffs' claim timely, pursuant to the doctrine of *contra non valentem*, and because we find that a genuine issue of material fact exists as to causation, we reverse.

I.

**<u>ISSUES</u>**

We must determine:

(1)    whether the trial court erred in granting Defendants' Motion for Summary Judgment on the ground of prescription; and

(2)    whether the trial court erred in granting Defendants' Motion for Summary Judgment on the ground of Plaintiffs' inability to establish causation at trial.

## II.

## FACTS AND PROCEDURAL HISTORY

In November 2010, Shellie Belaire, an employee of Crawfish Town USA, Inc. ("Crawfish Town"), allegedly sustained injury in an accident while in the course and scope of employment. Crawfish Town denies that Ms. Belaire sustained a work-related injury. It concedes, however, that Ms. Belaire was paid indemnity benefits. Following the accident, Ms. Belaire was prescribed medication for chronic pain resulting from the work injury.

On April 12, 2013, Ms. Belaire died. Ms. Belaire's family believed her death to be of natural causes. On May 20, 2013, Ms. Belaire's death certificate was issued. The certificate listed Ms. Belaire's cause of death as an accidental overdose of prescription medication. A formal demand on behalf of Ms. Belaire's two surviving sons was then made upon Defendants, Crawfish Town and LUBA Workers' Compensation, for conversion of Ms. Belaire's previously paid indemnity benefits to death benefits and burial expenses. Defendants requested the birth certificates of Ms. Belaire's two sons. The certificates were tendered by Plaintiffs, the estate of Ms. Belaire through Judge J. Ayo and through Larry Joseph Wiltz, Jr., the respective fathers on behalf of each of Ms. Belaire's sons. Subsequently, no death benefits or burial expenses were paid.

On May 7, 2014, Plaintiffs filed a Disputed Claim for Compensation on behalf of each son seeking death benefits, funeral expenses, outstanding medical expenses, penalties, and attorney fees on the basis of Ms. Belaire's alleged overdose of medication prescribed to treat her work injury. Upon receipt of these claims, the trial court assigned each son a separate docket number, and the claims were consolidated into one case. Defendants answered and filed a motion for

2

summary judgment on grounds of prescription and Plaintiffs' alleged inability to establish causation between Ms. Belaire's death and her alleged work accident at trial. In opposition, Plaintiffs contended that their claim had not prescribed because they filed the claim within a year of the date Ms. Belaire's actual cause of death was known and, therefore, within a year of the date they learned of a cause of action against Defendants. Plaintiffs also claimed that prescription was interrupted by Defendants' acknowledgment of liability for death benefits. Further, Plaintiffs contended that causation was established by the deposition of the coroner who completed Ms. Belaire's death certificate, Dr. Warren Degatur, and information collected in his investigation of Ms. Belaire's death.

The trial court granted Defendants' Motion for Summary Judgment. The trial court found that Plaintiffs' claim had prescribed and that Plaintiffs could not be able to meet their burden of proof at trial as to causation between Ms. Belaire's death and treatment for her workers' compensation accident. Plaintiffs appealed.

III.

**STANDARD OF REVIEW**

"Appellate courts review summary judgments *de novo,* using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Hogg v. Chevron USA, Inc.*, 09-2632, p. 5 (La. 7/6/10), 45 So.3d 991, 996. The considerations for whether summary judgment is appropriate are set forth in La.Code Civ.P. art. 966 which states, in part:

> B. (2) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for

3

> summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
>
> . . . .
>
> C. (2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The issue of prescription when raised by motion for summary judgment is subject to the same de novo review. *Hogg*, 45 So.3d 991. In our review, we will consider "the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765.

IV.

## LAW AND DISCUSSION

### *Prescription*

Plaintiffs contend the trial court erred in granting Defendants' Motion for Summary Judgment because prescription was interrupted by Defendants' alleged acknowledgement of liability. Alternatively, Plaintiffs contend the prescriptive period commenced when they discovered they had a cause of action. We agree in part. Applying the doctrine of *contra non valentem*, we find the

prescriptive period commenced when Plaintiffs' cause of action was reasonably discoverable and that Plaintiffs' claim filed within a year of that date was timely.

The applicable prescriptive period for work-related death benefits is set forth in La.R.S. 23:1209(A) which states, in part:

> A. (1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.

Pursuant to La.R.S. 23:1209(A), a claim for death benefits is prescribed unless "agreement is reached between the parties on death benefits within at least a year of the employee's death" or "a claim for death benefits [is] filed within one year of the employee's death." *Jonise v. Bologna Bros.*, 01-3230, p. 5 (La. 6/21/02), 820 So.2d 460, 464.

If a claim for death benefits has prescribed on its face, the burden is on the plaintiff to show that the prescriptive period has been suspended or interrupted. *Id.* One means by which prescription is interrupted is acknowledgment under La.Civ.Code art. 3464. Pursuant to this article "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." *Id.* An acknowledgement "involves an admission of liability, either through explicit recognition of a debt owed, or through actions of the debtor that constitute a tacit acknowledgement." *Gary v. Camden Fire Ins. Co.*, 96-55, pp. 4-5 (La. 7/2/96), 676 So.2d 553, 556. "A tacit acknowledgement arises from a debtor's acts of reparation or indemnity, unconditional offers or payments, or actions which lead the creditor to believe that the debtor will not contest liability." *Id.*

5

Alternatively, prescription may be suspended pursuant to the common law doctrine of *contra non valentem*, which halts prescription from running against a person who is unable to bring suit. *Causby v. Perque Floor Covering*, 97-1235 (La. 1/21/98), 707 So.2d 23. The Louisiana Supreme Court has recognized four grounds for the application of *contra non valentem*:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> 4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Id.* at 25.

The fourth ground of *contra non valentem* is commonly known as the discovery rule. *Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206. This rule "provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." *Id.* at 211. Stated another way, pursuant to this doctrine prescription will not begin to run against a plaintiff until he has "a reasonable basis to pursue a claim" against a defendant. *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 424 (La.1987). A plaintiff's ignorance of the facts giving rise to his cause of action, however, must not be "willful, negligent or unreasonable." *Wimberly*, 635 So.2d at 212. Further, the discovery rule standard is stringent and should only be applied in exceptional circumstances. *Eastin v. Entergy Corp.*, 03-1030 (La. 2/6/04), 865 So.2d 49.

Where a plaintiff has been "effectually prevented from enforcing his rights for reasons external to his own will," however, "principles of equity and justice" demand that prescription be suspended. *Wimberly*, 635 So.2d at 211.

Here, the claim for death benefits has prescribed on its face. Plaintiffs filed their claim on May 7, 2014, more than the prescriptive period of one year from Ms. Belaire's death on April 12, 2013. Further, the record does not show that the parties reached an agreement as to the payment of death benefits. The burden then shifted to Plaintiffs, who contended that prescription was interrupted by Defendants' alleged acknowledgment pursuant to La.Civ.Code art. 3464. Alternatively, the prescriptive period commenced on May 20, 2013, when Plaintiffs discovered they had a cause of action.

Addressing the acknowledgement issue first, we find Plaintiffs' argument without merit. Plaintiffs allege that Defendants' failure to deny a death benefits claim, Defendants' failure to file a WC-1003 "Stop Payment of Benefits" form, and Defendants' request for birth certificates amount to an acknowledgment of liability. However, the absence of an outright denial of a possible death benefit claim is not an overt admission of liability nor is it an act of reparation or indemnity, an unconditional offer or payment, or an "[action] which [would] lead the creditor to believe that the debtor will not contest liability." *Gary*, 676 So.2d at 556.

Further, the failure to file a WC-1003 "Stop Payment of Benefits" form is not an admission of liability. Pursuant to La.R.S. 23:1204, "[n]either the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this Chapter." Under this statute, an employer's payment of workers' compensation

benefits is not an admission of liability and, by extension, neither is an employer's decision to file or not file paperwork indicating such payment. While an employer's payment of benefits will interrupt prescription pursuant to the statutory command of La.R.S. 23:1209(A), Defendants here ceased paying benefits upon learning of Ms. Belaire's death.

Additionally, Plaintiffs contend that Defendants' request for birth certificates constituted an acknowledgment of liability. Other than Defendants' admission in their Answer that they did request birth certificates, there is no correspondence in the record from Defendants on the matter to suggest that the request for information presented an unconditional offer of payment, included language acknowledging liability for death benefits, or included language which would lead a party to believe that liability would not be contested. Thus, Plaintiffs have failed to establish that Defendants made an acknowledgment to interrupt prescription under La.Civ.Code art. 3464.

Alternatively, Plaintiffs contend that the prescriptive period commenced on May 20, 2013. On this date, Ms. Belaire's death certificate was issued listing the immediate cause of death as an overdose of prescription medication. Plaintiffs contend that prescription commenced on this date because it is the date they discovered their cause of action, employing a legal theory tantamount to a discovery rule argument.

Applying the discovery rule, we find prescription commenced on May 20, 2013. The discovery rule is applicable to suspend prescription "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Causby*, 707 So.2d at 25. Here, Plaintiffs stated they believed Ms. Belaire to have died of natural causes. Further,

8

there is nothing in the record to suggest that there was information prior to the issuance of the death certificate to alert Plaintiffs to a possible connection between Ms. Belaire's death in her home and a work accident occurring several years prior to her death. Plaintiffs' cause of action, then, was not "known or reasonably knowable" until the death certificate was issued, and they learned that Ms. Belaire's death may have resulted from treatment prescribed for her work accident.

Defendants cite *Jonise v. Bologna Bros.*, 00-485 (La.App. 1 Cir. 9/28/01), 809 So.2d 352, for the proposition that the prescriptive period for death benefits commences on the date of death. In *Jonise*, the first circuit held that the prescriptive period for death benefits did not commence on a date other than the employee's death where the plaintiff failed to show the employer lulled her into a false sense of security and failed to show an employer's knowledge of an employee's injury as having an effect on prescription. *Id*. *Jonise* is distinguishable, however, as the court did not apply the discovery rule in ruling out an alternate date for the commencement of prescription. *Id*.

This court's decision in *David v. Velsicol Chem. Corp.*, 09-1237 (La.App. 3 Cir. 10/27/10), 49 So.3d 997, *writ denied*, 10-2636 (La. 3/9/12), 83 So.3d 1052, is more pertinent. In *David*, plaintiffs filed suit against the manufacturer of a cattle dip alleging its product contaminated their property with arsenic. *Id*. Applying discovery rule principles, this court found that the plaintiffs could not have had a reasonable basis to pursue a claim against the manufacturer, and therefore prescription could not have commenced, before the plaintiffs learned that the cattle dip could have been the cause of their arsenic contamination. *Id*. In light of the foregoing legal principles and in the interest of equity and justice, we find that prescription could not have begun to commence against Plaintiffs before

9

they learned that treatment prescribed for Ms. Belaire's work injury could have been the cause of her death, giving rise to their cause of action. As such, we find that the prescriptive period commenced on May 20, 2013, and that Plaintiffs' claim filed within one year of this date was timely.

### *Causation*

Plaintiffs contend the trial court erred in granting Defendants' Motion for Summary Judgment on grounds of causation because they presented sufficient evidence to show a factual issue existed as to the cause of Ms. Belaire's death. We agree. The evidence gathered in the coroner's investigation is sufficient to create a genuine issue of material fact as to whether a causal connection exists between Ms. Belaire's death and treatment for her work injury.

To establish a claim for death benefits a plaintiff must prove, by a preponderance of the evidence, that a causal relationship exists between the work accident and death. *McKelvey v. City of Dequincy*, 07-604 (La.App. 3 Cir. 11/14/07), 970 So.2d 682. Further, a plaintiff is not required to establish the exact cause of death. *Id*. In *McKelvey*, this court found that a plaintiff had established a causal connection between a work accident and an employee's death in evidencing that, more likely than not, the employee died of a probable mixed drug intoxication of medications prescribed for a work injury. *Id*. At trial, the plaintiff introduced a toxicology report and pharmacy records which showed the employee had high amounts of several medications prescribed for his work injury in his system at the time of death and that the employee had continuously used these medications the year leading up to death. *Id*. The toxicology report also indicated that the employee did not have alcohol or controlled substances in his system at the time of

death. *Id*. Further, while not proof of causation in itself, the employee's death certificate was also introduced which stated that the cause of death was a "probable mixed drug intoxication." *Id*. at 687. The court found that the evidence taken collectively indicated that there was a reasonable probability that the employee's work injury and death were causally related. *Id*.

In light of *McKelvey*, we find that Plaintiffs set forth sufficient evidence to create a genuine issue of material fact as to a causal relationship between Ms. Belaire's death and her work accident. As in *McKelvey*, Plaintiffs offered pharmacy records which show continuous use of prescription medication for approximately a year leading up to Ms. Belaire's death. Plaintiffs also offered a toxicology report which showed that Ms. Belaire's fluids at the time of death were negative for alcohol and narcotics and positive for several drugs she had been prescribed for her injury. Further, the toxicology report indicated that for three of these drugs, the amounts found in her system at the time of death exceeded the therapeutic range. Further, the coroner remarked that the medication levels in Ms. Belaire's vitreous fluids were "substantially high" and that this indicated the levels in Ms. Belaire's blood would be higher. He added that while he did not currently have the information, that there was likely a way to extrapolate how much prescription medication was in Ms. Belaire's blood at the time of death from the information on her vitreous fluids.

Defendants contend that there is no evidence of causation because the coroner testified in his deposition that he could not rule out other causes of death and could not opine that, more probably than not, prescription medications caused Ms. Belaire's death. However, the coroner also expressed in his deposition that it was his feeling that Ms. Belaire had "over-taken two different opioids and that was

11

the cause of her death." He affirmed that he based this decision on the itemization of medications and pills missing from each bottle, Ms. Belaire's fluid samples, a review of her prescription records, the scene of Ms. Belaire's death, and discussions with Ms. Belaire's doctor and family members. The coroner's deposition, then, is not conclusive on this issue.

A genuine issue of material fact under La.Code Civ.P. art. 966 is "one as to which reasonable persons could disagree." *Hogg*, 45 So.3d at 997. In light of the coroner's testimony, the toxicology report revealing high and potentially fatal amounts of prescription medication in Ms. Belaire's system, and this court's decision in *McKelvey*, we find reasonable minds could disagree as to whether a causal connection could be established between Ms. Belaire's death and medication taken to treat her work injury. As a genuine issue of material fact exists on the issue of causation, a trial on the merits is the proper proceeding to resolve this matter. Accordingly, we reverse the trial court's grant of Defendants' Motion for Summary Judgment on the issue of causation and remand for further proceedings.

V.

**CONCLUSION**

For the foregoing reasons, we reverse the judgment of the trial court and remand the matter for a trial on the merits. Costs of this appeal are assessed against Defendants, Crawfish Town USA, Inc. and LUBA Workers' Compensation.

**REVERSED AND REMANDED.**

12

NUMBER 15-180
Consolidated With
NUMBER 15-181

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ESTATE OF SHELLIE BELAIRE (JUDGE J. AYO ON BEHALF OF MINOR SON G.M.A.)

VERSUS

CRAWFISH TOWN USA, ET AL.

AMY, J., dissenting.

I respectfully dissent from the majority opinion as I find that an affirmation is required. As noted by the majority, plaintiffs pursuing workers' compensation death benefits must demonstrate, by a preponderance of the evidence, causation between the work-related accident and the death. *See McKelvey v. City of Dequincy*, 07-604 (La.App. 3 Cir. 11/14/07), 970 So.2d 682. In my opinion, the slim record before this court indicates that the workers' compensation judge correctly determined that the submissions were deficient on the issue of causation. Even upon consideration of the employer's evidence (e.g., the coroner's deposition, toxicology report, and prescription logs), I do not find that genuine issues of material fact exist as to this element. At most, the coroner generally expressed the probability that prescription medication caused the decedent's death. However, there is no evidence placing the death within the context of the workers' compensation claim or the treatment received by the claimant as a result thereof. In short, the plaintiffs have failed to produce factual support indicating that they "will be able to satisfy their evidentiary burden of proof at trial" on the issue of causation. *See* La.Code Civ.P. art. 966(C)(2).

For these reasons, I would affirm the workers' compensation judge's ruling.