**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

*PMc by JEW*
*JEW*

**2019 CA 1199**

**ROBIN LAROCCA**

**VERSUS**

**PRIMESOURCE BUILDING PRODUCTS AND ESIS**

**Judgment Rendered:** JUL 0 8 2020

* * * * * *

On Appeal from the Office of Workers' Compensation
District 6, Parish of Tangipahoa
State of Louisiana

Docket No. 17-07307

Hon. Jason G. Ourso, Workers' Compensation Judge Presiding

* * * * * *

Joe Arthur Sims
John F. Watts
Sandra Destin Sims
Hammond, Louisiana

Counsel for Plaintiff/Appellant
Robin Larocca

Kevin A. Marks
Scott R. Huete
New Orleans, Louisiana

Counsel for Defendants/Appellees
Primesource Building Products and ESIS

* * * * * *

**BEFORE:  McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

*Holdridge J. concurs*

**McCLENDON, J.**

An employee appeals a judgment of the Office of Workers' Compensation (OWC) that granted the employer's motion for summary judgment and dismissal on the basis of prescription, and accordingly, dismissed the employee's disputed claim for compensation seeking indemnity benefits with prejudice. For the reasons that follow, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

On February 17, 2014, Robin Larocca ("Ms. Larocca") was injured in a motor vehicle accident ("the accident") while in the course and scope of her employment with Primesource Building Products ("Primesource"). Primesource accepted Ms. Larocca's workers' compensation claim and provided medical benefits.

In early 2015, Primesource learned that Ms. Larocca had settled a related third-party claim without Primesource's knowledge or written consent. Consequently, Primesource suspended Ms. Larocca's medical benefits. Ms. Larocca filed a disputed claim for compensation regarding medical treatment on February 6, 2015 ("medical benefits claim"). The parties resolved the medical benefits claim after brief litigation, and it was dismissed from OWC's docket on January 29, 2016.

As a result of the injuries she sustained in the accident, Ms. Larocca underwent a cervical surgery in August 2015 and a lumbar surgery in September 2017. Ms. Larocca took paid time off ("PTO") for the time she was absent from work while recovering from her first surgery, and therefore continued to receive her full pay. However, Ms. Larocca exhausted her PTO after her second surgery. Ms. Larocca then contacted Primesource regarding workers' compensation indemnity benefits. Primesource notified Ms. Larocca that her claim for compensation indemnity benefits was not timely.

On October 27, 2017, more than three years after the accident, Ms. Larocca filed a disputed claim seeking indemnity payments for the time she was absent from work to recover from her second surgery ("indemnity benefits claim"). On December 11, 2017, Primesource filed a peremptory exception raising the objection of prescription. OWC denied the exception of prescription. The parties then conducted discovery.

2

On August 13, 2018, Primesource filed a motion for summary judgment and dismissal based on the issue of prescription ("motion for summary judgment"). Ms. Larocca opposed the motion for summary judgment. Ms. Larocca conceded that the indemnity benefits claim was facially prescribed, but contended that it was still viable because prescription had been interrupted on two grounds. First, Ms. Larocca argued that Primesource paid her wages in lieu of compensation, thereby suspending prescription until such payments ended in September of 2017. Second, Ms. Larocca claimed that Primesource intentionally lulled her into a false sense of security by leading her to believe that a Primesource policy required that she use all of her PTO and sick leave prior to filing her indemnity benefits claim ("alleged PTO policy"), thereby suspending prescription until Primesource informed her otherwise.

The motion for summary judgment was heard on April 10, 2019. OWC ruled in favor of Primesource, granting the motion for summary judgment and dismissing the indemnity benefits claim with prejudice. A written judgment in accordance with the ruling was executed April 24, 2019. From this judgment, Ms. Larocca appeals, raising the following assignment of error:

> The trial court improperly granted [defendants' motion for summary judgment] in this matter as there is a clear issue of material fact based upon the evidence and discovery obtained in the matter.

## LAW AND ARGUMENTS

A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3) and (4). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (*per curiam*). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which

3

reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Hines**, 876 So.2d at 765-66.

In a motion for summary judgment, the burden of proof rests with the mover. LSA-C.C.P. art. 966(D)(1). However, if the moving party will not bear the burden of proof at trial on the issue before the court on the motion, the moving party's burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party may not rest on the mere allegations or denials of his pleadings but must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. arts. 966(D)(1) and 967(B); **Ritchey v. State Farm Mut. Auto. Ins. Co.**, 2017-0233 (La.App. 1 Cir. 9/15/17), 228 So.3d 272, 276.

Although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription may be raised by motion for summary judgment. **Hogg v. Chevron USA, Inc.**, 2009-2632 (La. 7/6/10), 45 So.3d 991, 997. When prescription is raised by motion for summary judgment, this court conducts a *de novo* review, applying the same criteria used by the trial court in determining whether summary judgment is appropriate. **Hogg**, 45 So.3d at 997; **Par. Nat. Bank v. Wilks**, 2004-1439 (La.App. 1 Cir. 8/3/05), 923 So.2d 8, 13.

A party pleading prescription generally has the burden of proving it. **Ward v. McDermott**, 2004-1189 (La.App. 1 Cir. 6/10/05), 916 So.2d 246, 249. However, if prescription is evident on the face of the pleadings, the burden of proof shifts to the claimant, who must then prove that the running of prescription was suspended or interrupted in some manner. **Ward**, 916 So.2d at 249.

The relevant prescriptive period for filing a claim for workers' compensation indemnity benefits is found in LSA-R.S. 23:1209. Prescription is interrupted by filing a formal claim with the office of workers' compensation. See LSA-R.S. 23:1209(A)(1) and (B). A claim for workers' compensation indemnity benefits prescribes one year from the

date of the accident or, if benefits have been paid, one year from the last payment. LSA-R.S. 23:1209(A); **Hernandez v. ASAP Employment Serv., Inc.**, 2017-1436 (La.App. 1 Cir. 10/18/18), 266 So.3d 299, 300.[1]

This matter arises from an accident that occurred on February 17, 2014. No indemnity benefits have ever been paid. The indemnity benefits claim was filed on October 17, 2017, more than three years after the February 17, 2014 accident, and more than one year after the medical benefits claim was dismissed on January 29, 2016.[2] Thus, as conceded by Ms. Larocca, the indemnity benefits claim was unquestionably prescribed on its face at the time it was filed. Ordinarily, both as the movant in the motion for summary judgment, and as the party pleading prescription, Primesource would bear the burden of proof at trial of this issue. See **Milbert v. Answering Bureau, Inc.**, 2013-0022 (La. 6/28/13), 120 So.3d 678, 684. However, because the indemnity benefits claim was prescribed on its face, the burden of proof shifted to Ms. Larocca to prove that there are genuine issues of fact which indicate that the running of prescription was suspended or interrupted in some manner. See **Milbert**, 120 So.3d at 684, and **Ward**, 916 So.2d at 249.

As set forth above, Ms. Larocca argues that prescription was interrupted because Primesource paid her wages in lieu of compensation. The payment of wages in lieu of compensation interrupts the prescriptive periods set forth in LSA-R.S. 23:1209 just as compensation payments would. **Bracken v. Payne and Keller Co.**, 2006-0865 (La.App. 1 Cir. 9/5/07), 970 So.2d 582, 589. Wages in lieu of compensation are deemed

---

[1] A claim for medical benefits prescribes one year after the accident or, if such payments have been made, three years from the date of the last payment. LSA-R.S. 23:1209(C); **Hernandez**, 266 So.3d at 300.

[2] In **Howard v. Trelles**, 95-0227 (La.App. 1 Cir. 2/23/96), 669 So.2d 605, writ denied, 96-0712 (La. 5/3/96), 672 So.2d 690, a disputed claim for medical benefits compensation was filed, but was later settled and dismissed. The dismissal included an explicit reservation of rights for indemnity benefits and future medical benefits. This court found that prescription was interrupted during the pendency of the medical benefits claim as to both medical and indemnity benefits, though prescription began to run anew from the date of dismissal. **Howard**, 669 So.2d 605 at 608. In the instant matter, Primesource concedes that the medical benefits claim interrupted prescription as to indemnity benefits under **Howard**, but contends that the indemnity benefits claim was facially prescribed regardless of the interruption because it was filed on October 17, 2017, more than a year after the medical benefits claim was dismissed on January 29, 2016. This case is distinguishable from **Howard**, however, because there is no evidence in the record before us that Ms. Larocca expressly reserved her rights to make future indemnity benefits claims when dismissing the medical benefits claims. See **Melancon v. Meadow Brook Rehab**, 2003-1255 (La.App. 3 Cir. 4/7/04), 869 So.2d 989, 993-94. However, because Ms. Larocca's indemnity benefits claim was filed more than three years after the accident and more than one year after dismissal of the medical benefits claim, the indemnity benefits claim was facially prescribed when filed regardless of whether **Howard** applies.

5

applicable when services rendered by a disabled employee after an accident are not commensurate with the wages paid, and the employee does not actually earn all of his pay. The underlying test is whether the wages paid after the accident were actually earned. A determination of whether the wages were actually earned depends on the facts and circumstances of each case. **Dupre v. Surbo Tubular Servs., Inc.**, 2012-1131 (La.App. 1 Cir. 2/15/13), 113 So.3d 1090, 1092, writ denied, 2013-0593 (La. 4/19/13), 112 So.3d 226. Ms. Larocca contends that Primesource compensated her at the same rate of pay after the accident as before the accident, even when she was medically restricted from performing all of her regular duties and working her regular hours. Ms. Larocca reasons that even if her commission was earned, her salary was not, because it was not altered to reflect the reduction in hours worked and duties fulfilled.

Ms. Larocca also claims that Primesource intentionally paid her wages that she did not earn in order to lull her into a false sense of security that caused her to refrain from filing suit until after the prescriptive period expired. When an employer lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, the employer cannot invoke the time bar to defeat compensation. **Dupaquier v. City of New Orleans**, 260 La. 728, 734, 257 So.2d 385, 387-88 (1972). Although numerous appellate court decisions have recognized that an employee's delay in filing suit may be justified in such a situation, the success of the argument is dependent on the facts of the particular case. **Causby v. Perque Floor Covering**, 97-1235 (La. 1/21/98), 707 So.2d 23, 26. Ms. Larocca maintains that if Primesource had not lulled her into a false sense of security, she would have run out of PTO and sought indemnity benefits much sooner and within the prescriptive period.

## DISCUSSION

The only documents that may be filed to support or oppose a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. LSA-C.C.P. art. 966(A)(4). In support of its motion for summary judgment, Primesource submitted portions of Ms. Larocca's June 14, 2018 deposition; the indemnity benefits claim; the medical benefits claim and dismissal of same; the affidavit and portions of

6

the deposition of Alan Broussard, Ms. Larocca's direct supervisor; portions of the deposition of Keith Daigrepont, Mr. Broussard's supervisor;[3] the affidavit of Patty Lopez, Primesource's Benefits Manager; and Ms. Larocca's responses to the requests for admission propounded to her by Primesource. In support of Ms. Larocca's opposition to Primesource's motion for summary judgment, Ms. Larocca offered, among other exhibits, her December 28, 2017 affidavit; her June 14, 2018 deposition, together with exhibits, including portions of her May 2, 2016 deposition[4] and pages from Primesource's 2014 and 2016 employee handbooks; Mr. Broussard's deposition, together with exhibits, including emails produced by Primesource in response to Ms. Larocca's discovery requests ("the Primesource emails"); and portions of Mr. Daigrepont's deposition, together with exhibits, including the Primesource emails.[5] We summarize and consider the evidence presented by the parties as follows.[6]

---

[3] Mr. Daigrepont's title with Primesource was distribution branch manager and district operations manager.

[4] The majority of testimony reviewed herein is taken from Ms. Larocca's June 14, 2018 deposition. Therefore, mentions of Ms. Larocca's deposition testimony refer to the June 14, 2018 deposition, unless specifically indicated otherwise.

[5] We note that these are not exhaustive lists of the evidence Primesource and Ms. Larocca submitted.

[6] In its initial, timely filed reply memorandum, Primesource raised objections to exhibits numbered 2-7 by Ms. Larocca that she submitted in support of her opposition to Primesource's motion for summary judgment. "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." LSA-C.C.P. art. 966(A)(4). Additionally, Article 966(D)(2) sets forth that the court "may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made." Article 966(D)(2) states that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." Article 966(D)(2) further provides that the trial court "shall consider all objections prior to rendering judgment" and "shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider." See **Pottinger v. Price**, 2019-0183 (La.App. 1 Cir. 10/23/19), 289 So.3d 1047, 1052.

Although Primesource properly raised its objections to Ms. Larocca's documents in its timely filed reply memorandum, the record before us does not reflect that OWC ruled on the objections during the hearing on the summary judgment motion. Moreover, OWC did not provide written reasons, nor did OWC address Primesource's objections in the April 24, 2019 written judgment. Accordingly, we find OWC erred in failing to rule on the properly raised procedural objections prior to ruling on the motion for summary judgment. See **Jefferson Par. Sch. Bd. v. TimBrian LLC**, 2018-349 (La.App. 5 Cir. 5/9/19), 273 So.3d 528, 535, writs denied, 2019-00954, 2019-00957, 2019-01010 (La. 9/24/19), 278 So.3d 979, 279 So.3d 388, 933.

However, the error is of no moment in this instance, and we need not consider Primesource's objections. See **Jefferson Par. Sch. Bd.**, 272 So.3d at 535. The record shows the parties filed additional memorandums and documents prior to the April 10, 2019 hearing on Primesource's motion for summary judgment. These submissions included most of the documents Primesource objected to in its initial reply memorandum. The record demonstrates that no party objected to the additional documents. Thus, under Article 966(D)(2), the court "shall consider any documents to which no objection is made."

Furthermore, Primesource seemingly waived its objections by failing to seek review of OWC's failure to rule on its objections by filing an answer to this appeal or a supervisory writ. See **Thompson v. Ctr. for Pediatric & Adolescent Med., L.L.C.**, 2017-1088 (La.App. 1 Cir. 3/15/18), 244 So.3d 441, 447, writ

7

At the time of the accident, Ms. Larocca was employed with Primesource as a territory manager, or outside salesperson. Ms. Larocca estimated that she worked eight to ten hours per day, calling on approximately two hundred clients. Ms. Larocca was responsible for ensuring her clients had sufficient stock and product displays of the building products sold by Primesource, as well as presenting new products to her clients. Ms. Larocca made her own work schedule.

Ms. Larocca's position required significant travel during her regular workday. However, as a result of the injuries Ms. Larocca sustained in the accident, there were periods of time in 2015, 2016, and 2017 when medical restrictions precluded Ms. Larocca from traveling to all of her usual sales calls. Though the record does not reflect the exact dates and lengths of time during which Ms. Larocca was subject to driving restrictions, it is clear that Primesource consistently permitted Ms. Larocca the flexibility to work from home in order to comply with her doctor's recommendations. For most of the relevant time periods, Ms. Larocca was able to work as usual for four to six hours per day, and would then return home to work remotely. However, there were also intervals when Ms. Larocca was unable to drive at all and would exclusively work from home. While working at home, Ms. Larocca was able to contact customers via telephone or email, place orders, and process orders through Primesource's system. Mr. Broussard was asked whether a salesperson who had established relationships with her clients could effectively maintain those relationships with phone calls and emails, and he replied, "[Ms. Larocca] was very good at that."

Although Ms. Larocca was often able to modify her hours and duties in order to accommodate the medical restrictions resulting from her injuries, there were also times when she was completely absent from work, such as after her surgeries. During these periods, Ms. Larocca took PTO. Ms. Larocca has asserted that Primesource representatives communicated to her that Primesource's alleged PTO policy required that she use all of her PTO time prior to seeking worker's compensation indemnity benefits. Ms. Larocca stated she learned of the alleged PTO policy around February

denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062. Therefore, these documents are in evidence and must be considered by this court in conducting its de novo review. See LSA-C.C.P. art. 966(D)(2). See also **Jackson v. City of Zachary**, 2017-1583 (La.App. 1 Cir. 8/6/18), 256 So.3d 323, 328 n.3.

2015, shortly after her accident. Ms. Larocca maintains that she was led to believe that Primesource's alleged PTO policy was beneficial to all concerned: Primesource would benefit because she would continue in her position, and Primesource would not have to hire someone else to fill her role; and she would benefit by receiving full pay through PTO, instead of receiving a percentage of her pay through indemnity benefits. Ms. Larocca also stated that she wanted to continue working as long as she could, and that she probably communicated that desire to Primesource.[7]

Ms. Larocca specifically claims that she and Mr. Broussard discussed the alleged PTO policy several times. Ms. Larocca testified that she asked Mr. Broussard about the issue on November 3, 2017, after receiving notice from Primesource that she had waited too long to file for indemnity benefits. Ms. Larocca maintained that Mr. Broussard confirmed her understanding of the alleged PTO policy and indicated that he would look for written documentation of the policy for her.

However, Mr. Broussard testified by affidavit that he had no knowledge of any policy requiring an employee to take PTO prior to filing a claim for workers' compensation benefits and denied telling Ms. Larocca about such a policy. During Mr. Broussard's deposition, he stated that he told Ms. Larocca that he may have heard something about exhausting PTO prior to filing for indemnity benefits, but he was not sure. He later realized that he had been thinking about a policy regarding PTO and short-term disability, not a policy regarding PTO and workers' compensation.

Ms. Lopez testified by affidavit that she had personal knowledge of Primesource's policies regarding workers' compensation. She denied that Primesource has any policy, formal or informal, requiring that employees take PTO prior to requesting workers' compensation indemnity benefits. Ms. Lopez stated that she did not tell Ms. Larocca that Primesource had such a policy and that she has no knowledge of any other employee telling Ms. Larocca of such a policy.[8]

---

[7] In order to take PTO, Ms. Larocca was required to request it through Mr. Broussard. Some of Ms. Larocca's requests for PTO were for vacation. All of her requests for PTO were approved.

[8] Ms. Lopez also testified that she had personal knowledge of Primesource's self-insured retention payments in this matter, and that Primesource has paid approximately $191,183.79 in medical benefits to or on behalf of Ms. Larocca in connection with this matter.

Ms. Larocca argues that Primesource's employee handbooks support the alleged PTO policy. However, Ms. Larocca conceded during her deposition that neither the 2014 nor the 2016 version of Primesource's handbook indicated that an employee was required to exhaust PTO prior to filing a claim for workers' compensation benefits. Ms. Larocca also admitted that at the time of her accident, she either had or should have had knowledge from the handbooks that Primesource provided workers' compensation benefits.

Both prior to and following the accident, Ms. Larocca's wages consisted of a small base salary and an earned commission based on her performance. Despite her sometimes limited schedule after the accident, Ms. Larocca earned approximately the same amount of money in 2015, 2016, and 2017 as she had before the accident. However, this was attributed to high demand for building materials resulting from recent floods in the area.[9]

Mr. Daigrepont and Mr. Broussard consistently stated that Ms. Larocca's sales commissions comprised the majority of her compensation. Mr. Daigrepont explained that "the lion's share of [Ms. Larocca's] compensation would be based on commission," that the commission was based exclusively on sales margin, and that the commission would not be affected by the number of hours worked. Mr. Broussard was not privy to information regarding Ms. Larocca's salary, but he affirmatively stated that Ms. Larocca's commission payments would not have been affected by the number of hours she worked, because the commissions were based on the amount of her sales, "gross margin dollars." Mr. Daigrepont explained "[i]t was my position that [her] sales are fine... So whatever she's doing with it, whether she's working one hour or [fourteen] hours, it's -- that's how she is judged on her sales." He further stated, "I'm also thinking about the coverage of her territory. If she was able to cover it working however many less hours, why would we stop it?"

When Ms. Larocca was asked during her first deposition whether she had experienced any wage loss as a result of the accident, Ms. Larocca initially responded,

---

[9] Ms. Larocca's February 5, 2015 disputed claim for compensation and her October 27, 2017 disputed claim for compensation both reflect a monthly pay range between $4,000 and $5,000.

"[t]hat's hard." Ms. Larocca then explained, "I feel I have lost because I haven't been able to fully do my duties and I've been on a lot of limited hours for work." Ms. Larocca insisted she did not know whether she had made a claim for workers' compensation wage loss benefits at that time and referred the question to her attorneys. During Ms. Larocca's second deposition, she was asked, "[d]id Primesource ever pay you for work that you didn't do?" Ms. Larocca responded, "[n]o." Ms. Larocca was also asked whether she "[felt] like [she] was being shortchanged in terms of earnings due to limited hours" after the accident, and she responded "No, sir." Nevertheless, when asked immediately afterwards if she had "[missed] out on money" because she had not been able to "fully do" her job, plaintiff replied affirmatively.

In defense of this deposition testimony, Ms. Larocca contends that when she was asked whether she had been paid for work she did not perform, she answered without the benefit of Primesource's discovery responses, which support her arguments. Specifically, Ms. Larocca argues that the Primesource emails demonstrate that Primesource intentionally allowed Ms. Larocca to work half days or light duty from home, without taking the correlating PTO and without decreasing her pay, in order to lull her into a false sense of security and prevent her from taking legal action.

In an August 22, 2014 email, Ms. Lopez asked Mr. Broussard if he could accommodate Ms. Larocca's work restrictions. Mr. Broussard responded:

> Pretty much a six hour workday start to finish. Just like she was doing for 1/2 days before. Longest drive time is about 1 hour, but not every day. Drive between stops can be five to twenty minutes and stops can last (standing and sitting) about twenty to thirty minutes.

Rose Rush, an employee in Primesource's Human Resources department, then asked Mr. Broussard what Ms. Larocca was being paid when she was only working half days.[10] Mr. Broussard answered that he did not have that information, but assumed Ms. Larocca would be getting paid per her original agreement.

In an August 25, 2014 email, Ms. Larocca notified Mr. Broussard and other Pimesource employees of her schedule for the next few weeks. The schedule reflects that she planned to work five to six hours each day in the field due to her driving

---

[10] The transcript indicates that Ms. Rush is no longer employed with Primesource, and the parties have been unable to locate her for a deposition.

restrictions, and work from home afterwards. Mr. Broussard forwarded the message to several other employees and asked if this schedule was "acceptable." He further stated that this was "pretty much what she did [before], worked 1/2 in the field and 1/2 day from home." When asked whether the schedule was acceptable to him, Mr. Broussard responded:

> It is good with me and [Mr. Daigrepont]. [Ms. Larocca] has always put in a good performance for us. I am worried about the limits the new doctor has put on her and Rose is worried about how much we are paying her now.

In a January 13, 2015 email, Ms. Rush suggested that Mr. Broussard should "charge 1/2 days to PTO" if Ms. Larocca was not working a full eight-hour day. Mr. Broussard stated that he would talk to Ms. Larocca after her surgery "and see where we stand."

In a September 10, 2015 email, in response to Ms. Larocca's notification that she would have "[four] more weeks of no driving" but that she would work from home, Ms. Rush questioned whether Primesource should or could accommodate Ms. Larocca working from home on a long term basis. Mr. Daigrepont sent the following response:

> We did it for quite some time already – for several months or so in 2014, then restricted duty until now. I'm no lawyer (I only get subpoenaed :)[sic], but seems like another lawsuit if we allowed in the past and now disallow….?

When questioned about this email during his deposition, Mr. Daigrepont stated that at the time the email was sent, there was a rumor that Ms. Larocca was going to sue Primesource. Mr. Daigrepont stated that he would have possibly been involved with a decision regarding whether Ms. Larocca's salary was reduced when she worked half-days. However, as stated above, Mr. Daigrepont did not object to Ms. Larocca's modified scheduled because her sales were fine. Mr. Daigrepont testified at his deposition that he would have referred questions regarding PTO and workers' compensation to Primesource's Human Resources department.

In a request for admission, Primesource asked, "Admit that at the time you filed your initial disputed claim for compensation in 2015 seeking approval of Workers' Compensation medical benefits that you were aware that you could have asserted a claim for Workers' Compensation indemnity benefits." Ms. Larocca responded, "Admit."

12

Similarly, when Ms. Larocca was asked directly whether she knew she could have filed for indemnity benefits in May 2016, Ms. Larocca replied affirmatively, though she then qualified her answer immediately afterwards by stating, "I knew I filed the medical stuff."

The issue before us is whether Ms. Larocca established a genuine issue of material fact regarding whether she was paid wages in lieu of compensation or was lulled into a false sense of security, resulting in her failure to file suit within the prescriptive period. These claims involve careful consideration of the facts and circumstances of each particular case. See **Dupre**, 113 So.3d at 1092; **Causby**, 707 So.2d at 26.

Having thoroughly considered the record before us under the *de novo* standard of review, we find that the evidence presented on the motion for summary judgment plainly reflects genuine issues of material fact. The testimony and documentary evidence regarding the facts and circumstances is inconsistent and open to conflicting interpretations. Such credibility determinations are inappropriate on a motion for summary judgment. For these reasons, we find that the trial court erred in granting summary judgment in favor of Primesource. We reverse that judgment and remand to the trial court for further proceedings.

## CONCLUSION

For the foregoing reasons, we reverse the April 24, 2019 judgment of the Office of Workers' Compensation granting Primesource Building Products' motion for summary judgment and dismissing Robin Larocca's claims on the basis of prescription. This matter is remanded for further proceedings consistent with this opinion. All costs of this appeal are cast to Primesource Building Products.

**REVERSED.**